**Beoties EMORY, Plaintiff-Appellant,**

v.

**Clarence PEELER, Individually and in his official capacity as Superior Court Judge, Stone Mountain Judicial Circuit, Defendant-Appellee.**

No. 83–8477.

United States Court of Appeals, Eleventh Circuit.

April 8, 1985.

Donald M. Dotson, Atlanta, Ga., Bensonetta T. Lane, College Park, Ga., for plaintiff-appellant.

Kathryn Allen, Hamilton Lokey, Atlanta, Ga., for defendant-appellee.

Before TJOFLAT and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

This is a suit brought by a juror in a state court murder trial against the judge who presided over the trial. The juror claimed that the judge violated his constitutional rights by singling him out in open court, after the jury returned its verdict, as the only juror to vote against the death penalty and by commenting about the juror to a news reporter in a published interview. The juror sought declaratory relief and money damages against the judge under 42 U.S.C. § 1983 (1982)[1] and the state law of

1. 42 U.S.C. § 1983 (1982) provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

defamation.[2] The district court dismissed the suit, concluding that the complaint failed to state a section 1983 claim for relief and that the court lacked subject matter jurisdiction over the state law claim. We agree with the district court's disposition of Emory's section 1983 claim but remand his state law claim for money damages so that the district court can reconsider whether to exercise pendent jurisdiction and decide its merits.

## I.

We begin by paraphrasing the facts alleged in the plaintiff's complaint.[3] In December 1981, the plaintiff, Beoties Emory, was summoned, qualified, and selected to serve on a twelve-member jury in a murder trial in the Superior Court of DeKalb County, Georgia before the defendant, Judge Clarence L. Peeler, Jr. The jury unanimously found the accused guilty of murder, but it was unable to reach a unanimous decision recommending the imposition of the death penalty.[4] The jury therefore returned a verdict recommending a sentence of life imprisonment. After the jury's verdict was published in open court, Judge Peeler examined the jurors to determine how they voted. Judge Peeler's inquiry revealed that eleven jurors had voted for the imposition of the death penalty and that one juror, Emory, had held out for a sentence of life imprisonment. Judge Peeler accordingly sentenced the defendant to life imprisonment, as required by Georgia law. After the trial, Judge Peeler had an interview with a wireservice news reporter in which he stated that he had "considered" lodging perjury charges against the holdout juror for giving false responses to questions put to him during the pretrial voir dire examination of the jury venire. The statement was published in local and national newspapers. Emory was never charged with perjury.

Emory contends that these facts are sufficient to constitute a violation of rights guaranteed him by the first[5] and ninth amendments,[6] and protected against state infringement by the fourteenth amendment,[7] and that Judge Peeler is liable to

Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

2. The district court's jurisdiction over the 42 U.S.C. § 1983 claim was based on 28 U.S.C. § 1343 (1982); jurisdiction over the tort claim for defamation rested on the doctrine of pendent jurisdiction.

3. Treating the well-pleaded allegations in the complaint as true, *Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977), we review the complaint to determine whether it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). When considering a district court's order granting a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim, we may look only to the facts alleged in the naked complaint, and not beyond. *Milburn,* 734 F.2d at 765. The facts recited in the complaint here are painfully brief.

4. The jury trial of a murder case in Georgia in which the prosecution seeks the death penalty is conducted in two phases. In the first phase, the jury determines whether the defendant is guilty; in the second phase, it decides whether to recommend the imposition of the death penalty. *See generally* Ga.Code Ann. § 17–10–30 (1984) (procedure for imposition of the death penalty). A jury must unanimously recommend the death penalty for the court to sentence a defendant to death. *Hill v. State,* 250 Ga. 821, 301 S.E.2d 269 (1983); *Miller v. State,* 237 Ga. 557, 229 S.E.2d 376 (1976); Ga.Code Ann. § 17–10–31 (1984).

5. The first amendment to the Constitution provides in pertinent part: "Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble...."

6. The ninth amendment to the Constitution provides: "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

7. The first amendment is made applicable to the states through the fourteenth amendment. *See Duncan v. State of Louisiana,* 391 U.S. 145, 147–48, 88 S.Ct. 1444, 1446–47, 20 L.Ed.2d 491 (1968). We have been pointed to no authority, nor have we found any, which holds that all

him under 42 U.S.C. § 1983.[8] According to Emory, Judge Peeler's conduct interfered with his first and ninth amendment right as a juror to deliberate and to reach a verdict free from "governmental dictation" and intrusion and had a "chilling effect" on his exercise of that right in the future. Put in other words, Emory says he had a constitutional right to keep his jury verdict confidential and that Judge Peeler had no authority to ascertain his verdict by questioning him. Emory also contends that Judge Peeler's actions deprived him, without due process of law, of his constitutionally protected liberty interest in his reputation. With respect to his pendent state law claim, Emory asserts that Judge Peeler's statement to the news reporter was slanderous under Georgia law[9] and that the judge's conduct, considered as a whole, violated his common law right to serve and deliberate freely on a jury. Emory's complaint seeks a declaration that Judge Peeler violated Emory's rights under the U.S. Constitution and the law of Georgia and a judgment for money damages, an attorney's fee, and costs.

## II.

As noted, Emory seeks both money damages and declaratory relief in each of his claims, federal and state. We first dispose of his claims for declaratory relief, holding that he fails to present a case or controversy. As to his claims for money damages, we hold that the doctrine of judicial immunity bars Emory from recovering under 42 U.S.C. § 1983 for Judge Peeler's in-court conduct. Emory's section 1983 claim based on Judge Peeler's out-of-court conduct also fails, as it does not involve the deprivation of a constitutionally protected interest. Whether Judge Peeler's statements to the news reporter transgressed the law of Georgia will be determined in the district court, on remand, or in the state courts.

## A.

Emory asks that the district court declare that the statements Judge Peeler made about him were in violation of Emory's constitutional rights and of the laws of Georgia.[10] 28 U.S.C. § 2201 (1982), echo-

rights "retained by the people" under the ninth amendment are protected from state infringement by the due process clause of the fourteenth amendment. It has been argued, however, that, in adopting the ninth amendment, the states recognized that the people possess "fundamental rights" not explicitly set forth in the Bill of Rights and that those fundamental rights are enforceable under the due process clause of the fourteenth amendment, *see, e.g., Griswold v. Connecticut,* 381 U.S. 479, 492–93, 85 S.Ct. 1678, 1685–86, 14 L.Ed.2d 518 (1965) (Goldberg, J., concurring), and, thus, under 42 U.S.C. § 1983.

8. Emory's complaint can be read, though Emory has not urged us to do so, as asserting a cause of action directly under the ninth amendment, since he posited the court's subject matter jurisdiction on 28 U.S.C. § 1331 (1982) as well as 28 U.S.C. § 1343(3) and (4) (1982). Implicit in such a cause of action is the notion that, any time a state official deprives a person of any right "retained by the people" under the ninth amendment, the official is answerable to the injured person in money damages in a suit in federal district court; the court would consider such a claim as "arising under the Constitution" within the meaning of section 1331. We need not determine whether any cause of action for money damages can be implied under the ninth

amendment, because we dismiss Emory's complaint on other grounds.

9. Ga.Code Ann. § 51–5–4 (1984) provides as follows:

**51–5–4. Slander defined; when special damage required; when damage inferred.**
(a) Slander or oral defamation consists in:
(1) Imputing to another a crime punishable by law;
(2) Charging a person with having some contagious disorder or with being guilty of some debasing act which may exclude him from society;
(3) Making charges against another in reference to his trade, office, or profession, calculated to injure him therein; or
(4) Uttering any disparaging words productive of special damage which flows naturally therefrom....

10. The federal district court is empowered to issue a declaratory judgment by the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1982). Section 2201 provides, in pertinent part:

**§ 2201. Creation of remedy**
In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate

ing the "case or controversy" requirement of article III of the Constitution, provides that a declaratory judgment may only be issued in the case of an "actual controversy." That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests. *Lake Carriers' Association v. MacMullan,* 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972); *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959–60, 22 L.Ed.2d 113 (1969); *Sullivan v. Division of Elections,* 718 F.2d 363, 365 (11th Cir.1983). The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. *Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Commissioners,* 622 F.2d 807, 821–22 (5th Cir.1980), *cert. denied,* 450 U.S. 946, 101 S.Ct. 1479, 67 L.Ed.2d 613 (1981).[11] Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury. *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 1666, 75 L.Ed.2d 675 (1983); *Golden v. Zwickler,* 394 U.S. at 108, 89 S.Ct. at 959–60; *Wolfer v. Thaler,* 525 F.2d 977, 979 (5th Cir.), *cert. denied,* 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 800 (1976). The remote possibility that a future injury may happen is not sufficient to satisfy the "actual controversy" requirement for declaratory judgments. *See City of Los Angeles v. Lyons,* 461 U.S. at 103, 103 S.Ct. at 1666 (1983).

Emory alleges that he has been injured by Judge Peeler's past conduct, both inside and outside of the courtroom. Emory makes no factual allegation, however, that such conduct has continued or will be repeated in the future. The mere possibility that Emory will once again be summoned, qualified, and selected to sit as a juror in a capital case before Judge Peeler and perhaps subjected to a reenactment of the scenario that occurred in this case is too remote to be labeled a controversy. A declaration that Judge Peeler's past conduct violated Emory's constitutional rights and Georgia law "would [be] nothing more than a gratuitous comment without any force or effect." *Northern Virginia Women's Medical Center v. Balch,* 617 F.2d 1045, 1049 (4th Cir.1980).

In sum, Emory's claim for declaratory judgment relief fails to satisfy the threshold "case or controversy" requirement of article III and the "actual controversy" prerequisite of 28 U.S.C. § 2201. Accordingly, the district court was correct in dismissing that claim.[12] *See Golden v. Zwickler,* 394 U.S. at 109–110, 89 S.Ct. at 960. *Cf. O'Shea v. Littleton,* 414 U.S. 488, 493–97, 94 S.Ct. 669, 675–77, 38 L.Ed.2d 674 (1974).

### B.

▮▮▮ Emory seeks damages for Judge Peeler's in-court conduct, alleging that Judge Peeler, "in open court, demanded that the plaintiff identify himself as the juror who voted against the imposition of the death penalty." The doctrine of judicial immunity precludes such recovery here.[13] This doctrine, which is vital to the

---

pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

**11.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**12.** It is apparent that Emory seeks declaratory relief in an effort to avoid the formidable obsta-

cle of judicial immunity. *See* text Part II.B. *See Pulliam v. Allen,* —— U.S. ——, 104 S.Ct. 1970, 1978–81, 80 L.Ed.2d 565 (1984) (judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in his judicial capacity); *Slavin v. Curry,* 574 F.2d 1256, 1264, *modified,* 583 F.2d 779 (5th Cir. 1978) (judge not immune from suit for declaratory relief); *United States v. McLeod,* 385 F.2d 734, 738 n. 3 (5th Cir.1967).

**13.** We pretermit the question of whether *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), forecloses Emory's claim in this Subpart or in Subpart C *infra.*

proper administration of justice, is founded on the notion that a judge must " 'be free to act upon his own convictions, without apprehension of personal consequences to himself.' " *Stump v. Sparkman*, 435 U.S. 349, 355, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978) (citing *Bradley v. Fisher*, 13 Wall. 335, 347, 20 L.Ed. 646 (1872)). The salutary objectives of the doctrine are such that federal courts have applied it in civil rights suits against judicial officers to protect them from judgments for money damages. *Stump v. Sparkman*, 435 U.S. at 356, 98 S.Ct. at 1104; *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Harper v. Merckle*, 638 F.2d 848, 856 n. 9 (5th Cir.), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). In *Stump*, the Supreme Court established a two-part test for determining whether a judge enjoys absolute immunity for his conduct. First, was the judge, in performing the acts in question, dealing with the plaintiff in his judicial capacity and were his acts of the sort normally performed by judicial officers?[14] *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107. If the answer to this question is in the negative, judicial immunity does not lie. If the answer is in the affirmative, the second prong of *Stump*'s test comes into play: did the judge's conduct fall clearly outside his subject matter jurisdiction? *Id.* 435 U.S. at 359–64, 98 S.Ct. at 1106–08; *Harper v. Merckle*, 638 F.2d at 858. If it did, the judge may be held to respond in money damages. As the Supreme Court stated in *Stump:*

> A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."

> .    .    .    .    .

> A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.

435 U.S. at 356–59, 98 S.Ct. at 1105–06 (citations omitted).

In the case at hand, there is no dispute that the defendant judicial officer had subject matter jurisdiction over the case which brought him into contact with the plaintiff. The only debatable question is whether the plaintiff's allegations satisfy the first prong of the *Stump* test. We conclude they do not.

The judicial conduct complained of—the interrogation of a juror about his verdict—took place in a courtroom as a state murder trial was coming to a close. Such interrogation is a function normally performed by trial judges. The juror was "dealing with" Judge Peeler in the judge's official capacity. In short, the judge's conduct was a "judicial act."[15] Judge Peeler therefore cannot be held answerable to Emory in

---

**14.** The former Fifth Circuit, in *Harper v. Merckle*, 638 F.2d 848 (5th Cir.), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981) (citing *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir.1972), further refined the criteria for determining whether a judge's conduct constituted a "judicial act." Characteristics of a judicial act include:

> (1) the precise act complained of ... is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

638 F.2d at 858.

**15.** This case is readily distinguishable from *Harper v. Merckle*, 638 F.2d 848, 70 L.Ed.2d 85 (5th Cir.), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93 (1981), which held that a county judge was not immune from civil rights liability because his act of conducting an impromptu contempt proceeding against the plaintiff and his order that the plaintiff be incarcerated were not "judicial acts." There, the court said:

> [W]e caution that our holding is exceedingly narrow and tailored to his, the rarest of factual settings. Succinctly stated, we hold only that when it is beyond reasonable dispute that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears certain that no party has invoked the judicial machinery for any purpose at all, then the judge's actions do not amount to "judicial acts."

*Id.* at 859. In this case, Emory alleges no facts from which we can infer that Judge Peeler vindicated personal objectives when he singled him out as the hold-out juror.

money damages even if his conduct amounted to error.

### C.

Emory's final claim for damages is that Judge Peeler's out of court statement to the news reporter, that he considered lodging perjury charges against Emory but decided against it after investigating the matter, deprived him of his constitutionally protected liberty interest in his reputation without due process of law, in violation of the fourteenth amendment. We need not determine whether Judge Peeler's judicial immunity extended to his statement to the reporter because well established precedent bars Emory's 42 U.S.C. § 1983 claim for money damages for such conduct.

To state a claim under section 1983, a plaintiff must allege facts showing that the defendant's act or omission, done under color of state law, deprived him of a right, privilege, or immunity protected by the Constitution or laws of the United States. *Dollar v. Haralson County, Ga.,* 704 F.2d 1540, 1542–43 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983). A naked claim that a state official's action damaged the plaintiff's reputation does not state a deprivation, without due process of law, of a liberty or property interest guaranteed by the Constitution. *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976); *Bradford v. Bronner,* 665 F.2d 680, 682–83 (5th Cir. Unit B 1982).[16]

*Paul v. Davis, supra,* whose facts are analogous to those Emory presents, controls our decision. In *Paul,* city police distributed to merchants a "flyer" listing "active shoplifters" which included Davis' name and photograph. The police had Davis' name because he had been charged with shoplifting. The charge was dismissed after the flyer came out, and shortly there-

after Davis sued the police under section 1983, alleging that the "active shoplifter" designation had injured his reputation, would seriously impair his future employment opportunities, and would interfere with his ability to do business with local merchants. *Id.* 424 U.S. at 697, 96 S.Ct. at 1159. The Supreme Court found no constitutional violation. The court held that damage to reputation must be coupled with the denial of a more tangible interest, such as loss of employment, to warrant the fourteenth amendment due process protection delivered by section 1983; reputation, standing alone, is not a liberty interest recognized by the Constitution or federal law. *Id.* at 700–02, 712, 96 S.Ct. at 1160–61, 1166.

Emory is in virtually the same position as was Davis. He too claims a litany of consequences flowing from the alleged defamation, asserting that Judge Peeler's out of court statement damaged his reputation and caused him humiliation, embarrassment, mental distress, public ridicule, threats, harassment, condemnation by his peers, and pecuniary loss. Consistent with *Paul,* we hold that Judge Peeler's statement, however seriously it may have harmed Emory's reputation, did not deprive Emory of any liberty interest protected by the Constitution. *Paul v. Davis,* 424 U.S. at 712, 96 S.Ct. at 1166; *accord Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir. 1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981) (injury to reputation plus violation of fourth amendment rights and loss of business goodwill protected by state law was sufficient to make out a section 1983 claim for relief); *Bradford v. Bronner,* 665 F.2d at 682–83 (stigmatization from firing and derogatory comments by government officials were insufficient allegations to sustain a section 1983 action).[17]

---

**16.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

**17.** Emory argues that he has a *state* protected liberty interest in his reputation, the deprivation of which is actionable under section 1983. *Paul v. Davis,* 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976); *Marrero v. City of Hialeah,* 625 F.2d 499, 513 (5th Cir.1980), *cert.*

Emory has a judicial forum in which to seek vindication of his injured reputation and relief for any damages caused by Judge Peeler's out-of-court statement; he may file a defamation cause of action in state court.[18] Emory's interest in his reputation is one of many interests which the state tort law protects against injury. We refuse to transform this state defamation case into a federal civil rights claim. *Baker v. McCollan*, 443 U.S. 137, 146–47, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979); *Paul v. Davis*, 424 U.S. at 698–702, 96 S.Ct. at 1159–61; *Cook v. Houston Post*, 616 F.2d 791, 794–95 (5th Cir.1980).

### D.

The district court dismissed Emory's pendent state law defamation claim for want of subject matter jurisdiction, citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (if federal claims are dismissed before trial, the state claims should be dismissed as well). At the time the judgment of dismissal was entered, the statute of limitations on Emory's claim may have run.

 We are unable to determine from the record if this is so and whether the district court considered the limitations problem in deciding not to exercise pendent jurisdiction. Our precedent indicates that it would be an abuse of discretion for a district court to dismiss a pendent claim which becomes time barred while the court has it under consideration. *See L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 426–27 (11th Cir.1984); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corporation, S.A.*, 711 F.2d 989, 999–1000 (11th Cir.1983); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982); *Pharo v. Smith*, 625 F.2d 1226, 1227 (5th Cir.1980). Accordingly, we vacate the dismissal of Emory's state law claim and remand it to the district court for further consideration in the light of this precedent.

AFFIRMED in part, VACATED in part, and REMANDED.

---

*denied*, 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). We reject this argument.

The state of Georgia has long recognized the state tort action of defamation. *See Spence v. Johnson*, 142 Ga. 267, 82 S.E. 646 (1914). Its libel and slander code sections are a codification of the common law. *American Broadcasting-Paramount Theatres, Inc. v. Simpson*, 106 Ga.App. 230, 126 S.E.2d 873, 878 (1962). Today, Georgia state tort actions for defamation are available to litigants pursuant to Ga.Code Ann. §§ 51–5–1 through 51–5–11 (1984) (libel and slander).

In support of his argument that Georgia law recognizes reputation as a liberty interest, Emory cites 1914 dicta by the Georgia Supreme Court: "[E]very man has the right to the enjoyment of a good reputation unassailed as he has a right to life, liberty, or property." *Spence v. Johnson*, 142 Ga. 267, 82 S.E. at 647. He fails to acknowledge that the court's statement was made in the context of a state tort action for defamation and that the court went on to say, "[a] suit for defamation is based on the injury done to reputation." *Id.* Other cases cited by Emory, to support his argument, are state tort actions for invasion of privacy and are not relevant.

We conclude that in Georgia, reputation is protected by tort law. Again, *Paul v. Davis, supra*, is on point; we need only substitute the name of the state.

> [Georgia] ... law does not extend to [plaintiff] any legal guarantee of present enjoyment of reputation which has been altered as a result of [defendant's] actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of a "liberty" or "property" recognized by state or federal law, nor has it worked any change of [plaintiff's] status as theretofore recognized under the State's laws.

*Paul v. Davis*, 424 U.S. at 711–12, 96 S.Ct. at 1165–66.

**18.** *See supra* note 9.