**Richard D. STOVER, Plaintiff,**

v.

**Edwin MEESE, III, et al., Defendants.**

**Civ. A. No. 2:85–0431.**

United States District Court,
S.D. West Virginia,
Charleston Division.

Jan. 3, 1986.

Richard D. Stover, pro se.

## MEMORANDUM OPINION
## AND ORDER

HADEN, Chief Judge.

Richard D. Stover has brought before this Court an action in which he seeks mostly equitable relief. The Defendants have all filed motions to dismiss. The *pro se* Plaintiff having responded to all the dispositive motions, the Court considers the issues raised by the motions mature for decision. A brief review of the facts is necessary to fully illuminate the issues.

### I. *Background* [1]

In 1973, Richard Stover pled guilty in the United States District Court for the Western District of Texas to importing marijuana in violation of 21 U.S.C. § 952(a). In 1974 he was sentenced to five years imprisonment and subjected to a special parole term of five years. He served twenty-two months of his sentence and was paroled in June, 1976. On March 3, 1980, Stover was discharged from further parole conditions. Upon the advice of a county sheriff, Stover made inquiries in January, 1985, directed towards obtaining a presidential pardon for his past offense. The Office of the United States Pardon Attorney sent Stover the proper forms and documents, the latter being of an instructional and informational nature. Upon reviewing the information, Stover states that he became "concerned" about what he perceived to be limitations placed upon his coveted, but merely prospective, application for presidential pardon.

Stover's complaint is essentially in two parts. First, he claims that the Office of the Pardon Attorney has placed limitations on the pardoning power of the President in violation of Article II, Section 2 of the Constitution. Apparently, this charge is based upon the informational literature

---

1. The following facts are taken for the most part from Stover's complaint and related exhibits. The Defendants have not disputed the facts as alleged by Stover.

supplied to him by the Pardon Attorney. One such piece of literature, entitled "Information and Instructions on Pardons," contains the following advisory in its paragraph 7:

"A Presidential pardon will not erase or expunge the record of conviction and it will not indicate innocence; therefore, it still will be necessary to report the conviction where such information is required. A Presidential pardon is a forgiveness and, in those states that require it, it usually helps restore any civil rights which were lost as a result of the conviction."

Stover interprets language of this type as preconditioning what he believes should be an unconditional pardon.[2] Thus, Stover has named Attorney General Edwin Meese, III, as a Defendant in this action, individually and as the executive in charge of the Office of the Pardon Attorney. Stover seeks a declaratory judgment that the alleged encumbrances on the presidential pardon are unconstitutional.

Second, Stover has named as Defendants all members of the West Virginia Legislature and Secretary of State Hechler. His problems with the Legislature are manifested by several state statutes which he claims undermine the purpose and effect of a presidential pardon. For illustrative purposes, Stover attached to his complaint copies of several state statutes which "discriminate" against convicted felons. He does not identify all the statutes which he claims encumber the presidential pardon; however, he does request that the Court search out, discover and then declare unconstitutional all of those statutes which conflict with his view of the presidential pardon. Presumably, Hechler, as chief elections of-

ficer in the state, is named as a Defendant because of the election statute which does not permit a convicted felon to vote.[3]

Ancillary to the argument that some targeted state statutes putatively encumber the presidential pardon is Stover's argument that the mere existence of these and other statutes constitute a continuing punishment of himself and other convicted felons. In reference to the identified statutes, he accuses the legislators of enacting *ex post facto* laws and bills of attainder. He again requests that the Court declare such statutes unconstitutional.

As mentioned, the case is now before the Court on the separate motions of the Defendants to dismiss. The Court turns first to the substance of the State Defendants' motions.

## II. *Discussion*

### A. *The State Defendants*

The State Defendants, Secretary Hechler and the members of the Legislature, both argue that the Plaintiff's complaint is not justiciable.[4] They contend that his case is not yet "ripe." The Defendants point out that Stover is claiming that the mere existence of certain state statutes may hinder the effectiveness of a presidential pardon. Until he receives such a pardon, the Defendants argue, he has suffered no injury for which relief can be granted.

It is axiomatic that the jurisdiction of a federal court is confined by the "case or controversy" requirement of Article III of the federal Constitution. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Stover's argument that a de-

---

2. The breadth of Stover's interpretation of the presidential pardon can be discerned from the following passage in his complaint:
   "Plaintiff asserts that [a presidential pardon] can expunge the record of conviction and in fact does. It also, in its legal effect, wipes out of existence the infamy of guilt. It makes the person to whom it is directed, a new man."

3. Stover appears to be confused about his rights under *W.Va.Code*, § 3–1–3 (Supp.1985). He argues that that statute only "permits" a convicted felon to vote, whereas ordinary citizens are "en-

titled" to vote. Actually, a person under conviction is not permitted to vote. This disfranchisement, however, continues only for the length of the sentence. Once the sentence is served, the convicted person is again entitled to vote. 51 Op.Att'y.Gen. 182 (1965). Hence, Stover's dispute with Hechler is imaginary.

4. The legislators also raise the defense of absolute immunity. Because of the Court's treatment of the ripeness issue, it need not, and does not, address the immunity defense.

claratory judgment action has a lower threshold of justicability is not well taken. Indeed, the statute authorizing a federal court to declare the rights of litigants by its terms limits such a remedy to cases of "actual controversy." 28 U.S.C. § 2201. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969) (*quoting Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

Stover argues that the Supreme Court's decision in *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), a declaratory judgment action, "would seem to dispel the argument that an individual must first expose himself to actual injury before he would be able to test the constitutionality of a statute threating [sic] impending harm." Stover's reliance on *Steffel*, however, is misplaced. In *Steffel*, the plaintiff was threatened with prosecution under a statute which was arguably unconstitutional. He and a companion had been distributing handbills outside of a mall. When threatened with arrest, he left the area; his companion remained and was arrested. The parties stipulated that if the plaintiff returned to the mall to distribute handbills, he would probably be arrested. The Supreme Court concluded that it was unnecessary for a party to expose himself to actual arrest or prosecution to make his constitutional challenge and that a declaratory judgment action was appropriate where alleged threats of prosecution were not "imaginary or speculative." *Id.* at 459, 94 S.Ct. at 1215.

■ The vital question in Stover's case concerns the speculative nature of his injury. Unlike the Plaintiff in *Steffel*, he is not threatened with an imminent criminal prosecution. Moreover, no assessment can be made here of the likelihood of injury to Stover. Stover claims that if he receives a presidential pardon, several state statutes will interfere with his rehabilitation. Yet, Stover admits that he is not guaranteed a pardon. He also admits, as he must, that the pardon is subject to the unfettered discretion of the president—a discretion as broad as any known to the law. The Court can only conclude that the granting of a presidential pardon is a contingency which creates at most a speculative threat of future injury. *Emory v. Peeler*, 756 F.2d 1547 (11th Cir.1985). In the words of the *Emory* court, "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id.* at 1552; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical"); *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (plaintiff must be immediately in danger of sustaining some direct injury); *Shell Oil Co. v. Noel*, 608 F.2d 208 (1st Cir.1979) (declaratory relief is not available where the threat of state action is imaginary, speculative, or chimerical).

■ Stover's alternative argument that he is continuing to be punished by state statutes which discriminate against convicted felons suffers from a similar justiciability problem. For instance, he complains of statutes which exclude convicted felons from certain occupations, but he does not allege that he has foregone employment, applied for employment, or even considered employment in those occupations covered by the statutes. The words of Justice Frankfurter are appropriately directed to the instant facts: "[T]he adjudicatory process is most securely founded when it is exercised under the impact of a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity." *Poe v. Ullman*, 367 U.S. 497, 503, 81 S.Ct. 1752, 1755, 6 L.Ed.2d 989 (1961). The instant situation does not raise to the required level of justiciability. This Court cannot and will not decide constitutional issues in a vacuum.

■ It is not enough that Stover points his finger at allegedly unconstitutional

statutes on behalf of others as well as himself. "The constitutional question ... must be presented in the context of a specific live grievance." *Golden*, 394 U.S. at 110, 89 S.Ct. at 960. Moreover, the mere existence of a statute which might be applied to the Plaintiff, or those similarly situated, at some future date is not enough to satisfy the "actual controversy" requirement of the Declaratory Judgment Act. *Western Mining Council v. Watt*, 643 F.2d 618 (9th Cir.) *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981); *French v. Devine*, 547 F.Supp. 443 (D.D.C. 1982) ("the mere existence of a statute ... is not ordinarily enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced against him according to its terms"). Stover seeks to have the Court dance merrily through the pages of the West Virginia Code with scissors in hand. The Court respectfully declines the invitation.

### B. *The Federal Defendants*

■ Attorney General Meese, the sole federal defendant, has moved to dismiss the complaint on several grounds. Because the Court finds his argument of nonjusticiability to have merit, it will not address the other grounds. Stover contends that the Office of the Pardon Attorney, as directed by Meese, "has so encumbered the President's Pardon as to make it practically worthless." He bases this allegation on the literature forwarded to him by the Pardon Attorney. The Court's review of the literature fails to disclose the virtue of Stover's position. The information disseminated by the Office of the Pardon Attorney is just that—information. It does not have the force of law and, consequently, does not in any way bind the President. Stover seems to believe that if he submitted his petition in the face of the limitations and conditions allegedly attached to the presidential pardon, he would in some way waive his right to challenge those disabilities.[5] The converse would appear to be true. Until such time as he receives a pardon, Stover cannot complain of any un-

constitutional limitations which might accompany the pardon. To consider the merit of any so-called encumbrances at this point would be mere conjecture on the part of the Court. It would put the Court to the task of clearing the brush from a trail which may not be chosen for travel.

It is significant that Stover does not allege that Meese and his underlings have placed restrictions upon petitioning for a pardon. Rather, he complains of what could occur after the pardon issued. Until such time as the injuries feared by Stover progress to reality, this Court cannot grant him relief.

### III. *Conclusion*

For the foregoing reasons, the motions of the Defendants to dismiss are granted. The case is ORDERED dismissed without prejudice.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record and to the *pro se* Plaintiff.

---

**5.** Stover cites no authority or reasoning for this proposition.