[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-16041
_____

D.C. Docket No. 4:10-cv-10077-JLK


HARTFORD CASUALTY INSURANCE COMPANY,
a foreign corporation

Plaintiff-Counter
Defendant-Appellee,

versus

INTRASTATE CONSTRUCTION CORP.,
a Florida corporation,

Defendant-Appellant,

CITY OF MARATHON,
a Florida municipality,

Defendant-Counter
Claimant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(December 17, 2012)

Before HULL and BLACK, Circuit Judges, and GOLDBERG,[*] Judge.

PER CURIAM:

In this declaratory judgment action arising from surety bonds on a construction contract, defendants the City of Marathon ("Marathon") and Intrastate Construction Corporation ("Intrastate") appeal the district court's grant of summary judgment to plaintiff Hartford Casualty Insurance Company ("Hartford") on Hartford's claim for declaratory judgment as to its surety liability. Defendant Marathon also appeals the district court's (1) grant of summary judgment for Hartford on Marathon's counterclaim against Hartford, and (2) denial of Marathon's motion for partial summary judgment on Marathon's counterclaim. After review and oral argument, we reverse in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

In 2000, Congress appropriated $100 million for the construction of wastewater treatment facilities to improve water quality in the Florida Keys National Marine Sanctuary. Pursuant to this congressional appropriation, Marathon, a municipality in the Florida Keys, initiated a series of projects to

---

[*]Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

construct wastewater treatment facilities within several geographical service areas of the city.  This appeal concerns the construction of wastewater treatment facilities in Service Areas 3 and 7 (referred to as "Area 3" and "Area 7").

## A.    Construction Contract for the Area 3 Project

Marathon solicited public bids from various contractors to construct a wastewater treatment facility in Area 3 ("the Area 3 project").  Intrastate submitted the winning bid in the amount of $2,061,000.  In May 2009, Marathon entered into a formal contract with Intrastate for the construction of the Area 3 project.[1]  The contract generally described the work as follows: "the City of Marathon Service Area 3 Wastewater Treatment Facility.  The project consists of constructing tanks, buildings, and installing wastewater treatment and pumping facilities, complete, in place, all in accordance with the construction drawings and technical specifications."  Hartford was not a party or signatory to this construction contract.

The contract, however, required Intrastate to furnish both a payment and a performance bond to secure the construction project.  The payment and performance bonds were to be in "the amount equal to 100% of the Contract Price payable under the Contract."  Furthermore, the performance bond was to

---

[1]The contract was dated April 14, 2009, but Marathon (through its mayor) signed the contract on May 27, 2009.

3

"guarantee the full and faithful execution of the Work in an amount equal to 100 percent (100%) of the total Contract Price."

The contract anticipated possible future changes to the work done on the Area 3 project. Specifically, the contract provided: "The Contract Documents may be amended to provide for additions, deletions, and revisions in the Work or to modify the terms and conditions thereof" through a written amendment or a change order. In another section, entitled "Changes in the Work," the contract similarly stated:

> Without invalidating the Contract and without notice to any surety, CITY may, at any time or from time to time, order additions, deletions, or revisions in the Work by a Written Amendment or Change Order. Upon receipt of any such document, CONTRACTOR shall promptly proceed with the Work involved which will be performed under the applicable conditions of the Contract Documents (except as otherwise specifically provided). All such changes in the Work shall be authorized by a Change Order.

The contract further provided that if the surety's bond required notice of any changes, Intrastate would be responsible for providing such notice, and the bond would be adjusted to reflect the change and increased coverage, as follows:

> [i]f notice of any change affecting the general scope of the Work or the provisions of the Contract Documents . . . is required by the provisions of any Bond to be given to a surety, the giving of any such notice will be CONTRACTOR'S responsibility. The amount of each applicable Bond will be adjusted to reflect the effect of any such change, and evidence of increased coverage provided to the CITY.

4

(emphasis added).

The contract contained a termination provision allowing Marathon to terminate the contract with or without cause. If Marathon terminated the contract for cause, such as Intrastate's failure to perform its contractual obligations, the contract provided that the surety would be responsible for taking over and performing the contract for Area 3. However, if Marathon terminated the contract without cause, the surety's responsibility for taking over the Area 3 project would not be triggered.[2]

## B.    Hartford's Bonds

On June 3, 2009, Hartford issued a performance and a payment bond, each in the amount of $2,061,000, for the Area 3 project. The bonds were signed on Hartford's behalf by its attorney-in-fact, S.P. Humenchick. Attached to both the performance and payment bonds was a certificate from Hartford entitled "Power of Attorney," which expressly authorized Humenchick to sign as a surety and to execute bonds on Hartford's behalf.

The performance bond identified the underlying "Contract" between Marathon and Intrastate as "City of Marathon Service Area 3 Wastewater and

---

[2]The contract language did not expressly discharge the surety from liability upon Marathon's termination of Intrastate without cause. However, Marathon does not dispute that its termination of Intrastate without cause would have absolved Hartford.

5

Stormwater Project." Hartford's performance bond for the Area 3 Contract also provided:

THE CONDITION OF THIS BOND is that if the CONTRACTOR:

1.    Performs said contract in accordance with its terms and conditions; and

2.    Pays CITY all losses, damages (direct and consequential including delay and liquidated damages), expenses, costs, and attorney's fees, including appellate proceedings, that CITY sustains because of a default by CONTRACTOR under the CONTRACT; and

3.    Pays CITY and all other amounts due CITY by CONTRACTOR because of a default by CONTRACTOR under the CONTRACT; and

4.    Performs the guarantee of all work and materials furnished under the CONTRACT for the time specified in the CONTRACT;

THEN THIS BOND IS VOID, OTHERWISE, IT REMAINS IN FULL FORCE.

With regard to possible future changes in the Area 3 Contract between Marathon and Intrastate, the performance bond stated: "Any changes in or under the Contract Documents and compliance or noncompliance with formalities, connected with the Contract or with the changes, do not affect the Surety's obligation under this bond. Surety hereby waives notice of any alteration or extension of time made by the City."

On August 3, 2009, Marathon issued Intrastate a "Certification of

6

Contractor's Insurance and Bonding" for the Area 3 project, certifying that Intrastate had obtained payment and performance bonds from Hartford in the amount of $2,061,000 each.  Two days later, Marathon issued Intrastate a "Notice to Proceed" on the Area 3 project.

By April 2010, approximately eight months after starting construction on the Area 3 wastewater treatment facility, Intrastate was incurring losses on the project, and Intrastate's subcontractors and suppliers began filing "Notices of Nonpayment" with Hartford and Marathon.  On April 14, 2010, Intrastate contacted Hartford to inform Hartford of Intrastate's insolvency and the need for financial assistance to complete its various bonded projects, including the Area 3 Project.[3]

## C.    Area 7 Project

On April 27, 2010, Intrastate and Marathon executed a document entitled "Change Order No. 1" to the project described as "City of Marathon Service Area 3 Wastewater Treatment Facility Project Contract dated May 26, 2009, in the amount of $2,061,000.00."  In Change Order No. 1 (the "Area 7 Change Order"), Intrastate and Marathon agreed to amend the Area 3 Contract by transferring the

---

[3]After reviewing Intrastate's books and financial records, Hartford directly informed Intrastate and Intrastate's bonding agent that Hartford would no longer be issuing new bonds or expanding bond coverage on existing bonded projects.

"scope of work for the Area 7 Wastewater Treatment Facility Project . . . into the Area 3 Wastewater Treatment Facility Project Contract."  Both Intrastate and Marathon signed the Area 7 Change Order.

Attached to the Area 7 Change Order was a "Change Order Summary," providing, in part:

THE FOLLOWING CHANGES ARE MADE TO THE CONTRACT DOCUMENTS:

| | | |
|---|---|---|
| (1) | Original Contract Price | $2,061,000.00 |
| (2) | Current Contract Price (Adjusted by Previous Change Orders) | $2,061,000.00 |
| (3) | Total Proposed Change in Contract Price | $2,984,487.00 |
| (4) | New Contract Price (Item 2 + Item 3) | $5,045,487.00 |
| (5) | Original Contract Time | 300 Days |
| (6) | Current Contract Time (Adjusted by Previous Change Orders) | 360 Days |
| (7) | Total Proposed Change in Contract Time | 0 Days |
| (8) | New Contract Time (Item 6 + Item 7) | 360 Days |

Area 7 was located approximately 5.5 miles away from Area 3, and the Area 7 project was to proceed under a completely separate set of plans and specifications than the Area 3 project.  The timelines for completing the Area 7 and Area 3 projects were also different.  Furthermore, as described above, the Area

8

7 Change Order added $2,984,487 to the original Area 3 contract price, increasing the original contract amount from $2,061,000.00 to $5,045,487.00.

Marathon sought Hartford's consent to the Area 7 Change Order. On May 14, 2010, Humenchick, the attorney-in-fact for Hartford, sent Marathon a letter, stating that Hartford, as surety on the Area 3 bond, "hereby acknowledge[s] and consent[s] to the increase of the contract price and penal sum of the [Area 3] bond from the original value of $2,061,000.00 to $5,045,487.00 in accordance with Change Order No. 1 issued effective April 27, 2010."

On May 24, 2010, Marathon issued Intrastate a separate "Notice to Proceed" for the Area 7 project. The Notice to Proceed provided, in part: "before you may start any Work at the site, you must provide additional performance & payment surety in the amount of $2,989,487."

**D.    Hartford Retracts its Bond on Area 7**

On June 30, 2010, Hartford's Assistant Bond Claim Manager, Jennifer Leuschner, sent a letter to Marathon, stating that (1) Hartford had become aware of Marathon and Intrastate's contract for the Area 7 project, (2) Hartford had issued a performance bond specifically for the Area 3 project, and (3) the Area 7 project was not covered by the Area 3 performance bond or any other Hartford bond. Leuschner's letter stated that Area 7 was a "separate site and project, regardless of

9

whether or not a separate contract was executed or change order to the Area 3 Contract was issued for the new Site 7," and that Hartford did not agree to provide a bond for Area 7 and did not agree to extend the Area 3 performance bond to Area 7. In her deposition, Leuschner testified that Humenchick "was specifically told in writing that he did not have the authority" to expand bond coverage for Area 7. Leuschner did not know why Humenchick wrote the May 14 consent letter. Leuschner also testified that she wrote the June 30 retraction letter shortly before becoming aware of Humenchick's May 14 consent letter.[4]

On July 2, Intrastate's attorney responded to Hartford's June 30 letter, stating that he was "shocked" by the letter in light of Humenchick's prior express consent to bond the Area 7 project. Intrastate's attorney stated that Hartford's June 30 letter constituted wrongful interference with Intrastate's contract with Marathon and could "only be viewed as an intentionally malicious act designed for the sole purpose of attempting to cripple [Intrastate's] ability to complete the subject contract and force [Intrastate] out of business." Shortly after Hartford received the July 2 letter from Intrastate informing Hartford of Humenchick's prior consent, Humenchick's authority to act on behalf of Hartford was terminated.

---

[4]The Bond Claims Manager for Hartford, Laura Mahler, testified at her deposition that Humenchick "was told in April [2010] on two separate occasions that he could not and had no authority to issue any change orders or new bond and change orders specifically to Site 7, and he agreed."

**E.     Marathon's Termination of Intrastate**

On August 6, 2010, Marathon sent Intrastate and Hartford a letter entitled "Notice of Default and Termination."  In that letter, Marathon stated that it had agreed with Intrastate, pursuant to the Area 7 Change Order, "to expand Intrastate's scope of work under the [Area 3] Contract."  The letter further stated that Marathon's Area 3 contract with Intrastate expressly provided for Marathon's absolute right to increase the scope of Intrastate's work under the contract, without notice to Hartford, and that the amount of the performance bond would "automatically" increase to cover the revised scope of the work.  As noted earlier, Intrastate's underlying Area 3 contract with Marathon anticipated changes to the contract and required Intrastate to provide a performance bond in the amount of 100% of the total contract price.

Marathon's Notice of Default and Termination further stated that, "[n]otwithstanding this automatic extension of coverage, [Marathon] sought and received Hartford's express written consent to the Change Order," as evidenced by Humenchick's May 14 letter.  Marathon then stated:

> While [Hartford's] June 30 [retraction] letter cannot, and does not, have any effect on whether the Performance Bond guarantees Intrastate's performance of the Change Order (it does), the June 30 Letter has directly forced the City to instruct Intrastate to stop its work under the Change Order until further notice.

11

Marathon warned that it intended to hold Intrastate and Hartford liable "for all delays associated with Hartford's attempts to avoid its obligations on the Performance Bond." Marathon demanded that Hartford retract its June 30 letter, or else Marathon would terminate the contract with Intrastate and hire another contractor, which would further exacerbate the damages under the contract.

After Marathon issued the above Notice of Default and Termination, Intrastate performed no more work on the Area 3 and Area 7 projects.

## F.    Hartford's Declaratory Judgment Action as to Area 7

On August 9, 2010, Hartford filed a declaratory judgment action in the district court against Marathon and Intrastate, asking the court to declare that Hartford had no liability as to Area 7. Hartford's complaint did not seek any relief from its performance bond as to Area 3.

Hartford's complaint alleged that the Area 7 Change Order was void for illegality because Marathon failed to solicit and obtain competitive bids for the Area 7 project, as required by Florida law. Alternatively, Hartford asserted that the Area 7 Change Order constituted a "cardinal change" to the underlying Area 3 contract. Because the Area 7 Change Order was void, Hartford was not liable for Area 7 work under its Area 3 bond. Hartford's complaint asked the district court to declare that (1) the Area 7 Change Order was void ab initio for illegality; (2) no

surety relationship existed between Hartford and the defendants Marathon and Intrastate with respect to the Area 7 Change Order; and (3) no bond issued by Hartford afforded coverage for the Area 7 Change Order.

On August 12, 2010, shortly after filing the instant action, Hartford wrote to Intrastate reaffirming its June 30 letter and stating that it would not issue a bond for Area 7. Hartford also stated, inter alia, that it had notified Intrastate prior to May 14, 2010 (the date of Humenchick's consent letter) that Hartford "would not consider any additional bonding, specifically including the Site 7 project."

### G.    Marathon's Counterclaim as to Area 3

Both Marathon and Intrastate answered Hartford's complaint, but only Marathon filed a counterclaim. Marathon's counterclaim against Hartford, filed on October 18, 2010, contained one count: breach of contract for Hartford's failure to comply with its obligations under the Area 3 bond. Specifically, Marathon alleged that Intrastate had breached the underlying Area 3 contract and failed to satisfy any of the four conditions listed on the Area 3 performance bond. As a result, Hartford was required to compensate Marathon for damages stemming from that breach, pursuant to the terms of the Area 3 performance bond. Marathon asserted that Hartford failed to honor its obligations under the performance bond, causing damages to Marathon.

## H.    Hartford's Takeover Offer

In November 2010, Hartford informed Marathon that it would be willing to take over the completion of the Area 3 project, and tendered a "Takeover Agreement" outlining the terms of the takeover.  However, Marathon found the terms of the takeover agreement unacceptable, and requested that Hartford simply perform the original bonded contract.  Hartford declined, and Marathon hired another contractor to finish the Area 3 project at the city's additional expense.

## I.    The District Court's Summary Judgment Order

Hartford moved for summary judgment on both its claim for declaratory relief and on Marathon's counterclaim.  Marathon, in turn, filed a "Motion for Partial Summary Judgment" on its counterclaim.  Marathon argued that Hartford breached the Area 3 performance bond by failing to take over the Area 3 project after Intrastate's termination, as required by the terms of the bond, and instead conditioning Hartford's completion of the Area 3 project on a takeover agreement. In its motion for partial summary judgment, Marathon did not argue that Hartford wrongfully failed to complete the Area 7 project, and did not allege any damages on the Area 7 project.

After a hearing, the district court granted Hartford's motion and denied Marathon's motion.  As to Hartford's declaratory judgment claim regarding Area

14

7, the district court noted that, since the filing of Hartford's complaint, "Defendant Marathon has retained a replacement contractor and surety for the Area 7 Project at no loss, and has declared that it is not seeking damages in its counterclaim for coverage of the Area 7 Project." Thus, the court stated, it "will not address any arguments that pertain to whether a surety relationship presently exists between Hartford and the Defendants with respect to the Area 7 Change Order or whether Marathon may recover for breach of contract for the alleged Area 7 Performance Bond."

Nevertheless, the district court proceeded to analyze whether Hartford was liable for the Area 7 project under Hartford's original performance bond for Area 3. The court concluded that the Area 7 Change Order constituted a "cardinal change" to Intrastate's underlying Area 3 construction contract, such as to relieve Hartford of any liability for Area 7 under its Area 3 bond. Having disposed of Hartford's claims about Area 7 pursuant to the cardinal change doctrine, the district court did not address whether the Area 7 Change Order violated Florida's competitive-bidding statutes.

As to Marathon's breach-of-contract counterclaim, the district court concluded that Hartford did not breach the terms of its Area 3 performance bond by not completing the Area 3 project. The district court reasoned, inter alia, that

15

Marathon terminated Intrastate for insufficient cause under their Area 3 construction contract, and, pursuant to the terms of that contract, Marathon's termination of Intrastate for insufficient cause relieved Hartford of its obligation to bond the Area 3 project. Specifically, the court found that: (1) Marathon terminated Intrastate "solely because Hartford refused to bond the Area 7" project, but (2) Hartford had no obligation to bond the Area 7 project in light of the cardinal change doctrine, (3) Intrastate maintained adequate bonding for the Area 3 project, and (4) Marathon could not require Intrastate to secure bonding for Area 7 from Hartford specifically in any event. Accordingly, the district court concluded that Hartford's refusal to bond the Area 7 project was a "spurious and improper reason for Marathon to terminate Intrastate on the Area 3 Project." Therefore, the district court granted summary judgment in favor of Hartford on Marathon's counterclaim for damages incurred in completing the Area 3 project.

## II.  DISCUSSION

**A.    Hartford's Declaratory Judgment Action Regarding its Liability for the Area 7 Project**

Before we can consider the merits of Hartford's declaratory judgment claim, we must first determine whether the claim is moot. "[B]ecause the question of mootness is jurisdictional in nature, it may be raised by the court sua sponte, regardless of whether the district court considered it or if the parties briefed the

16

issue." Nat'l Adver. Co. v. City of Miami, 402 F.3d 1329, 1331-32 (11th Cir. 2005). We review questions of mootness de novo. Id. at 1331.

Article III of the U.S. Constitution "limits the jurisdiction of federal courts to cases and controversies." Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189 (11th Cir. 2011) (internal quotation marks omitted). Similarly, 28 U.S.C. § 2201 provides that a declaratory judgment may only be issued in the case of "actual controversy," that is, a "substantial continuing controversy between parties having adverse legal interests." Emory v. Peeler, 756 F.2d 1547, 1551-52 (11th Cir. 1985); see 28 U.S.C. § 2201. This "continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." Emory, 756 F.2d at 1552. Although a case may have involved an actual controversy initially, the case becomes moot "when it no longer presents a live controversy with respect to which the court can give meaningful relief." Zinni v. ER Solutions, Inc., 692 F.3d 1162, 1166 (11th Cir. 2012) (internal quotation marks omitted); see also Christian Coal. of Fla., Inc., 662 F.3d at 1190 (stating that, for purposes of Article III, "the controversy 'must be extant at all stages of review, not merely at the time the complaint is filed.'" (quoting Preiser v. Newkirk, 422 U.S. 395, 401, 95 S. Ct. 2330, 2334 (1975))).

17

In this case, Hartford's declaratory judgment complaint sought a determination that it was not liable as a surety on the Area 7 project. In ruling on Hartford's declaratory action, the district court declined to address the issue of whether a surety relationship existed between Hartford and the defendants (Marathon and Intrastate) with respect to the Area 7 project, given that Marathon suffered no losses on that project. On appeal, the parties do not challenge this implicit finding of mootness by the district court. Additionally, nothing indicates that either Marathon or Intrastate were, or will be, seeking damages from Hartford as to the Area 7 project. Indeed, in its counterclaim against Hartford, Marathon did not ask for any relief with regard to the Area 7 project, but only sought damages on Area 3. Thus, at the time the district court issued its summary judgment order, there was no longer a "real and immediate" controversy with regard to Hartford's surety liability on the Area 7 project. See Emory, 756 F.2d at 1552. This lack of a live controversy mooted Hartford's declaratory judgment claim and deprived the district court of subject matter jurisdiction over that claim.

Accordingly, we reverse the district court's grant of summary judgment to Hartford on its declaratory judgment claim, and remand with instructions to dismiss that declaratory judgment claim as moot.

**B.     Marathon's Counterclaim for Breach of Surety Bond as to Area 3**

18

The only issues remaining in this appeal are whether the district court correctly granted summary judgment to Hartford on Marathon's counterclaim, and properly denied summary judgment to Marathon.[1]  As mentioned earlier, Marathon's counterclaim alleged that Hartford breached its Area 3 performance bond by failing to take over or pay the costs of completing the Area 3 project after Intrastate's termination.  Marathon sought damages from Hartford for the losses it incurred in hiring another contractor to complete the Area 3 project.  In response, Hartford does not dispute that its Area 3 performance bond was validly issued.  Rather, Hartford argues that it was not liable under its Area 3 performance bond because (1) Marathon terminated Intrastate from the Area 3 project without cause, and (2) the termination without cause relieved Hartford of its obligations under the bond.

The answer to the counterclaim issues thus rests on whether Marathon terminated Intrastate for cause or not.  Marathon contends that Intrastate's failure to bond the full contract price, which included the Area 7 project, justified termination.  Hartford responds that Marathon impermissibly terminated Intrastate on the Area 3 project based upon Hartford's refusal to bond the Area 7 project.

---

[1] We review the district court's grant or denial of summary judgment <u>de novo,</u> viewing the evidence "in the light most favorable to the nonmoving party."  <u>Brown v. Sec'y of State of Fla.,</u> 668 F.3d 1271, 1274 (11th Cir. 2012) (internal quotation marks omitted).

Hartford also notes that, under Florida law, a public entity may not require a contractor to secure a bond from a specific bonding company, and Marathon did not provide Intrastate an opportunity to obtain bonding for Area 7 elsewhere. We thus turn to whether Marathon properly terminated Intrastate for cause.

To answer that contract termination question, we focus on what Marathon and Intrastate agreed to in their contract. Marathon and Intrastate (at least between themselves) considered the Area 7 Change Order to be merely an extension of their underlying construction contract for Area 3, not an entirely separate contract for an independent project. For example, the Area 7 Change Order, which was signed by both Intrastate and Marathon, expressly provided that the Area 7 project "will be transferred into the Area 3 Wastewater Treatment Facility Project Contract." Thus, according to the express agreement between Marathon and Intrastate, only one underlying contract existed between them, and that one contract included both the Area 3 and Area 7 projects.[2]

The underlying construction contract between Marathon and Intrastate for the Area 3 project required Intrastate to obtain payment and performance bonds to

---

[2]We express no opinion as to whether the Area 7 Change Order was actually or legally a mere change to the underlying Area 3 construction contract, as Marathon and Intrastate considered it to be, or an entirely separate contract that did not affect the Area 3 construction contract. For purposes of this discussion, we focus only on what Marathon and Intrastate agreed to by executing the Area 7 Change Order.

secure the project in "the amount equal to 100% of the Contract Price." The contract also required Intrastate to obtain additional bond coverage for any increases to the scope of the work outlined in the contract, and to provide evidence of the increased coverage to Marathon.

Because Marathon and Intrastate treated the Area 7 Change Order as an amendment to the underlying Area 3 contract, rather than an entirely separate contract, Intrastate was contractually obligated to obtain payment and performance bonds to cover the Area 7 project. In fact, Marathon's "Notice to Proceed" on the Area 7 Change Order stated: "before you may start any Work at the site, you must provide additional performance & payment surety in the amount of $2,989,487" (the additional cost of the Area 7 project). The parties do not dispute that Intrastate contractually obligated itself to provide bonding for the Area 7 project.

The record shows, however, that Intrastate did not provide 100% bond coverage for the Area 7 project, as required by the terms of the underlying construction contract. It is true that Intrastate secured written consent from Hartford's agent, Humenchick, to bond the Area 7 Change Order. However, Hartford then retracted its consent via its June 30 letter, stating that Hartford would not provide any bonds for the Area 7 project. Even if Hartford's disavowal or retraction would ultimately be held to be legally improper in a court of law

21

years later, the fact remains that Hartford denied coverage for Area 7 at the time the Area 7 project was to begin. Therefore, Intrastate did not comply with its contractual obligation to provide 100% bond coverage.

In light of the foregoing, we need not decide whether Hartford was legally bound by Humenchick's consent letter and therefore wrongfully disavowed bond coverage for Area 7. The fact remains that Intrastate agreed to obtain a 100% bond from Hartford or some other bonding company and did not obtain one. Thus, regardless of whether Humenchick's consent letter actually bound Hartford to provide coverage for the Area 7 project (again an issue that we need not and do not decide), Intrastate ultimately failed to provide a 100% bond as required by Intrastate's underlying construction contract with Marathon.

Intrastate's failure to obtain 100% bond coverage for the increased contract price resulting from the Area 7 Change Order constituted a breach of the parties' single contract, providing Marathon with sufficient cause to terminate Intrastate from both the Area 3 and Area 7 projects.[3] Because Marathon terminated Intrastate for cause, Hartford remained obligated on its performance bond for Area 3.

---

[3]Intrastate did not file a counterclaim in the district court. Thus, for purposes of the appeal in this case, Intrastate does not dispute that Marathon terminated it for cause.

22

We recognize that Hartford also contends that its refusal to bond Area 7 was not a proper reason for the termination, given that Marathon could not require Intrastate to obtain a bond specifically from Hartford under Florida law. However, this argument lacks merit.

First, it is true that Marathon's August 6, 2010 Notice of Default and Termination indicates that Marathon terminated Intrastate because Hartford refused to retract its June 30 letter disavowing the Area 7 bond. Yet Hartford's singular focus on the letter ignores that the underlying reason why Hartford's June 30 letter caused Marathon to terminate Intrastate was because (1) the June 30 letter withdrew Hartford's consent to provide bond coverage for Area 7, and (2) in turn, Hartford's withdrawal of consent meant that Intrastate was now in breach of its contractual obligation to provide a performance bond covering 100% of the construction contract for the Area 3 and Area 7 projects. Furthermore, nothing in the record indicates that Marathon prevented Intrastate from obtaining a bond elsewhere after Hartford disavowed bond coverage on the Area 7 project. In fact, more than a month passed between Hartford's June 30 disavowal and Marathon's August 6 Notice of Default and Termination.[4] In the interim, Intrastate still

---

[4] Whether Intrastate has a viable claim or not against Hartford for retracting Humenchick's consent to bond Area 7 is not part of this lawsuit.

23

provided no bond for 100% coverage.

Because Marathon terminated Intrastate for cause, i.e., Intrastate's failure to secure a 100% performance bond for the total price of the underlying construction contract (which included the increased amount for the Area 7 project), Hartford was bound to take over or pay the costs of completing the Area 3 project, as dictated by the terms of the construction contract that was incorporated into Hartford's Area 3 performance bond. It is undisputed that Hartford failed to take over or pay the costs of completing the Area 3 project, and that Marathon suffered losses on the project. Hartford agreed to bond the Area 3 project and never disavowed the Area 3 bond. Nevertheless, it failed to perform on that bond. On appeal, aside from Marathon's purportedly improper termination of Intrastate, Hartford offers no other defense to its failure to complete the Area 3 project.

Accordingly, we reverse the district court's grant of summary judgment to Hartford on Marathon's counterclaim and vacate its denial of Marathon's summary judgment motion. We remand the counterclaim to the district court for reconsideration of Marathon's motion for partial summary judgment.

**REVERSED in part, VACATED in part, and REMANDED.**

24