KATHLEEN M. WILLIAMS, UNITED STATES DISTRICT JUDGE
THIS MATTER is before the Court on Defendant Miami-Dade County's ("County") motion to dismiss (DE 23). Plaintiffs C.F.C., S.C.C., WeCount!, Inc. ("WeCount"), and Florida Immigrant Coalition, Inc. ("FLIC") (collectively, "Plaintiffs") filed a response in opposition (DE 32), and Defendant replied (DE 36). For the reasons below, the County's motion to dismiss is GRANTED IN PART AND DENIED IN PART. Plaintiffs' motion for a hearing (DE 33) is DENIED AS MOOT.
I. Background
Plaintiffs filed a complaint against the County on July 20, 2018. (DE 1). On September 9, 2018, before Defendant had responded, Plaintiffs filed an amended complaint. (DE 22). The amended complaint alleges that the County's policy and practice of honoring detainer requests from Immigration and Customs Enforcement ("ICE") violates Plaintiffs' rights under both the Fourth and Fourteenth Amendments to the U.S. Constitution and also the parallel provisions of the Florida state constitution. Id. Plaintiffs seek injunctive and declaratory relief and money damages. Id.
For purposes of ruling on the motion to dismiss, the Court accepts the following facts alleged in the amended complaint and contained in the exhibits as true. Plaintiffs S.C.C. and C.F.C. are residents of Miami-Dade County, Florida. (DE 22 at 4). C.F.C. is also a member of WeCount. Id . Plaintiff WeCount is a "community-based, non-profit organization with a membership comprised of Florida residents." Id. at 5. Its stated mission is to "build the power of the immigrant community of Homestead through education, support, and collective action." Id. Plaintiff FLIC is a "non-profit statewide coalition of more than 65 member organizations and over 100 allies" whose stated mission is to "grow the connection, capacity, and consciousness of immigrant families, organizations and communities." Id.
On June 6, 2018, S.C.C. was arrested for driving with a suspended license and for driving without a valid license. Id. at 15. The arresting officer took S.C.C. to Metro *1246 West Detention Center. Id. On June 7, 2018, ICE issued an immigration detainer request form listing S.C.C. as its subject. (DE 22, Ex. A). The detainer form stated that S.C.C. was "a removable alien" under civil immigration law and asked local law enforcement to hold him for up to 48 hours after he would otherwise be released from their custody. Id . Because of the detainer, S.C.C. was "not placed in a diversion program" at his arraignment and remained in the County's custody for over a month awaiting trial because he was not eligible for pretrial release. Id. at 15. S.C.C.'s criminal case was set for trial on July 16, 2018, but, after the state attorney requested a continuance in the case, the state court judge reduced S.C.C.'s bail to $2.00, which S.C.C. paid on July 20, 2018. Id. Instead of releasing S.C.C. after he paid bail, the County re-arrested him based on the detainer from ICE and held him until the following day, July 21, 2018, when ICE took custody of S.C.C. and moved him to an ICE detention facility. Id. at 16.
On May 12, 2018, while out shopping with her family, C.F.C. was involved in a minor car accident in the parking lot of a grocery store. Id. at 16. Police officers from the Homestead Police Department arrived and, after speaking with C.F.C. and the other driver, arrested C.F.C. for driving without a license. Id. at 17. C.F.C.'s family paid her bail that day. Id. Despite the fact that an unknown officer told C.F.C. she would be released at 4:00 p.m. on May 12, 2018, the County refused to release her and instead re-arrested her pursuant to a detainer from ICE. Id. On May 14, 2018, ICE took custody of C.F.C. and, at the time of the amended complaint, she remained in ICE's custody. Id.
The detainer forms issued for both S.C.C. and C.F.C. did not allege probable cause to believe that they had committed a crime and the detainers were not issued by a neutral magistrate. Id. at 3. Instead, the detainer form asserted that "[p]robable cause exists that [S.C.C] is a removable alien" and, as support for this assertion, a box on S.C.C.'s detainer form had been checked next to an option stating that ICE's probable cause was based on "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (DE 22, Ex. A).[1]
S.C.C. and C.F.C. allege that the County re-arrested them on July 20, 2018 and May 12, 2018, respectively, pursuant to a recent change in policy that, in effect, requires Miami-Dade Corrections & Rehabilitation Department ("MDCR") staff to "honor all immigration detainer requests." (DE 22 at 28). This policy reversed the County's previous policy, which had been in place since December 2013 and significantly circumscribed the County's authority to arrest individuals pursuant to immigration detainer requests. Id. at 10-11. The 2013 policy stated that MDCR could honor detainer requests from ICE only if (1) "the federal government agrees in writing to reimburse Miami-Dade County for any and all costs relating to compliance with [ICE] detainer requests"; (2) "the inmate that is the subject of such a request has a previous conviction for a Forcible Felony ..."; and (3) the inmate has, at the time the *1247 County received the detainer request, "a pending charge of a non-bondable offense ...." Miami-Dade Cty. Bd. of Comm'rs, Resolution 1008-13, at 5 (Dec. 3, 2013), http://www.miamidade.gov/govaction/legistarfiles/MinMatters/Y2013/132196min.pdf. Because the federal government declined to reimburse the County for any expenses associated with detainers, MDCR stopped arresting individuals based on detainer requests in January 2014. (DE 22 at 10).
In 2016, the Board ratified its position when it unanimously opposed statewide legislation that would preempt its anti-detainer policy and "require ICE detainers to be honored." Id . Resolution 77-16, which the Board passed on January 20, 2016, cited the fact that "federal courts have found that local law enforcement agencies that detain individuals on the sole authority of a detainer request violate the Fourth Amendment of the U.S. Constitution, exposing such agencies to legal liability unless there has been an independent finding of probable cause to justify detention." Id. The Board's resolution goes on to state that "while criminal detainers are subject to multiple procedural safeguards, including a requirement of court approval, [ICE] detainer requests lack comparable protections ... [because] a judge is not required to review or approve an immigration detainer." Miami-Dade Cty. Bd. of Comm'rs, Resolution 77-16, at 5-6 (Jan. 20, 2016), http://www.miamidade.gov/govaction/legistarfiles/MinMatters/Y2015/153028min.pdf. The Board noted that "a judge is not required to review or approve an immigration detainer," and that a detainer "may be issued by a single Immigration[ ] and Customs Enforcement officer when there are no immigration proceedings pending." Id. at 6. "[T]his process," the Board found, "does not meet the U.S. Constitution's minimum standard for authorizing detention after an inmate is scheduled to be released." Id .
Despite the County's[2] clear position on the legality and efficacy of honoring all detainer requests, on January 26, 2017, Miami-Dade County Mayor Gimenez reversed course, issuing a memorandum to MDCR that ordered it to "honor all immigration detainer requests."[3] (DE 22, Ex. B). The directive was not preceded by any public notice or opportunity for debate, nor did it mention the Board's 2013 resolution limiting MDCR's authority to hold people pursuant to detainer requests and the myriad legal concerns with honoring detainers.
On February 17, 2017, the Board ratified the Mayor's directive and amended its 2013 Resolution (1008-13) to direct the Mayor "to ensure that, related to immigration detainer requests, Miami-Dade County ... is cooperating with the federal government to the extent permissible by law." Miami-Dade Cty. Bd. of Comm'rs, Resolution 163-17 (Feb. 17, 2017), http://www.miamidade.gov/govaction/matter.asp?matter=170440&file=false&yearFolder=Y201.[4] MDCR is following the Mayor's directive-as *1248 ratified by the Board's resolution-and, since January 26, 2017, has maintained a policy and practice of re-arresting individuals in its custody after their criminal custody has ended on the sole basis that the person is the subject of an immigration detainer request.
The amended complaint contains five counts against the County. Counts I and II are brought under 42 U.S.C. § 1983 and allege that the County violated Plaintiffs' Fourth and Fourteenth Amendment rights under the U.S. Constitution. (DE 22 at 27-30). Counts IV and V are brought under the parallel provisions of the Florida Constitution. Id. at 32-33. Count III is a claim for false imprisonment under Florida law. Id. at 30.
The amended complaint seeks: (1) an injunction prohibiting the County from detaining individuals pursuant to detainers without a judicial warrant or probable cause that the individual has committed a crime; (2) a declaration that the County's written policy of arresting people pursuant to immigration detainers is facially invalid; (3) a declaration that S.C.C. and C.F.C.'s arrests pursuant to detainers violated their Fourth and Fourteenth Amendment rights, violated their corresponding rights under the Florida constitution, and constituted false imprisonment under Florida law; and (4) monetary damages against the County. (DE 22 at 34).
The County moved to dismiss with prejudice on the grounds that: (1) this Court lacks subject matter jurisdiction over Plaintiffs' claims; (2) Plaintiffs lack standing to seek retrospective declaratory relief; (3) Plaintiffs failed to state Monell claims against the County under Section 1983 ; (4) Plaintiffs failed to allege viable claims under Florida law, and; (5) Plaintiffs failed to include the federal government, an allegedly indispensable party, as a defendant. (DE 23).
II. STANDARD OF REVIEW
In ruling on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court assumes as true all well-pled factual allegations and determines whether they plausibly give rise to an entitlement for relief. Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plaintiffs make a facially plausible claim when they plead factual content from which the court can reasonably infer that defendants are liable for the misconduct alleged. Iqbal , 129 S.Ct. at 1949 (citing Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Id. at 1950.
Although the court resolves all doubts or inferences in the plaintiff's favor, the plaintiff bears the burden to frame the complaint with sufficient facts to suggest that he is entitled to relief. Twombly , 550 U.S. at 556, 127 S.Ct. 1955. A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. at 557, 127 S.Ct. 1955. Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." Shands Teaching Hosp. and Clinics, Inc. v. Beech St. Corp. , 208 F.3d 1308, 1310 (11th Cir. 2000) (quoting *1249 Hishon v. King & Spalding , 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ).
A challenge to subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be presented as either a facial or factual attack. McElmurray v. Consol. Gov't of Augusta-Richmond Cty. , 501 F.3d 1244, 1251 (11th Cir. 2007). Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, which the district court takes as true when considering the motion. Lawrence v. Dunbar , 919 F.2d 1525, 1529 (11th Cir. 1990). In contrast, factual attacks challenge the existence of subject matter jurisdiction in fact, and in such cases "no presumptive truthfulness attaches to plaintiff's allegations." Id. The Eleventh Circuit has held that "the party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." McCormick v. Aderholt , 293 F.3d 1254, 1257 (11th Cir. 2002).
III. DISCUSSION
The Court first addresses the issue of subject matter jurisdiction in Section III.A. Then, in Sections III.B.1 and III.B.2, the Court addresses Plaintiffs' claims for declaratory relief, and the corresponding issues of standing and mootness. Next, in Section III.C, the Court addresses Counts I and II-Fourth and Fourteenth Amendment claims under Section 1983. In Section III.D, the Court addresses Count III-a claim for false imprisonment under Florida law. In Section III.E, the Court addresses Counts IV and V-claims under the Florida Constitution. Finally, in Section III.F, the Court addresses the County's argument that Plaintiffs cannot proceed without joining the federal government as an indispensable party.
A. This Court has Subject Matter Jurisdiction over Plaintiffs' Claims
The County argues that this Court lacks jurisdiction to entertain Plaintiffs' claims because of the "jurisdiction-stripping" provision of the Immigration and Nationality Act ("INA"). (DE 23 at 6); see 8 U.S.C. § 1252(g). Section 1252(g) provides that, subject to limited exceptions not at issue here, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).[5]
In all cases, "the first and fundamental question is that of jurisdiction." Steel Co. v. Citizens for a Better Environment , 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal quotations omitted). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex Parte McCardle , 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868).
The County relies on the Eleventh Circuit decisions Gupta v. McGahey , 709 F.3d 1062 (11th Cir. 2013), and Alvarez v. U.S. Immigration & Customs Enforcement , 818 F.3d 1194 (11th Cir. 2016), cert. denied sub nom. Alvarez v. Skinner , --- U.S. ----, 137 S.Ct. 2321, 198 L.Ed.2d 724 (2017), to support its argument that this Court lacks *1250 jurisdiction over Plaintiffs' claims. In Gupta , the Eleventh Circuit considered whether the district court had properly dismissed Gupta's Bivens claims for lack of subject matter jurisdiction under Section 1252(g). Gupta , 709 F.3d at 1063. In the district court, Gupta had argued that three ICE "agents violated his Fourth and Fifth Amendment rights when they arrested and detained him in connection with the initiation of removal proceedings against him." Id. The district court found that it lacked subject matter jurisdiction because "[e]very act about which Gupta complains flowed directly from the ICE agents' discretionary decision to commence removal proceedings and the actions those agents took to effectuate that decision." Gupta v. McGahey , No. 610-CV-280-ORL-22-GJK, 2011 WL 13137351, at *1 (M.D. Fla. 2011), aff'd , 709 F.3d 1062 (11th Cir. 2013). The Eleventh Circuit affirmed on the basis that ICE agents "[s]ecuring an alien while awaiting a removal determination constitutes an action taken to commence proceedings" under Section 1252(g). Gupta , 709 F.3d at 1065.
The present case is different from Gupta for several reasons. Here, Plaintiffs do not challenge any decision by DHS or ICE. Rather, Plaintiffs challenge the County's voluntary decision to comply with ICE detainers and re-arrest individuals for civil immigration purposes. Unlike the plaintiff in Gupta , Plaintiffs' claims do not "arise from" a decision or action by DHS to (1) commence proceedings, (2) adjudicate cases, or (3) execute removal orders under the INA. Instead, Plaintiffs' claims arise from the independent and intervening decision by Defendant to re-arrest and detain individuals after receiving non-mandatory requests from a federal agency to do so. See, e.g. , Flores v. City of Baldwin Park , No. 14-CV-9290-MWF, 2015 WL 756877, at *4 (C.D. Cal. 2015) ("[F]ederal law leaves compliance with immigration holds wholly within the discretion of states and localities."). This case is also distinguishable from Gupta on the grounds that the defendants in Gupta were federal government agencies (namely, ICE) and actors tasked with carrying out immigration enforcement. Defendant here is a state local entity, Miami-Dade County, that has not been tasked with carrying out immigration enforcement.
The County's reliance on Alvarez is similarly misplaced. In Alvarez , the Eleventh Circuit held-contrary to the County's reading of the case-that it did, in fact, have jurisdiction to hear Alvarez's Bivens claims against ICE officials who held him beyond the statutory period during which they could execute his removal. Alvarez , 818 F.3d at 1196 ("[W]e hold that § 1252(g) does not bar us from considering the merits of Alvarez's [Bivens] claim."). The Eleventh Circuit explained that "[t]he difficulty in interpreting this provision is that 'Congress has provided no explicit definition of the phrase "arising from," and courts have not always agreed on its plain meaning.' " Id. at 1201 (quoting Humphries v. Various Fed. USINS Emps. , 164 F.3d 936, 943 (5th Cir.1999) ). "Congress also has not defined 'commence proceedings,' 'adjudicate cases,' or 'execute removal orders.' " Id. (quoting 8 U.S.C. § 1252(g) ). The Alvarez court noted that "for ICE 'to prevail [on jurisdictional grounds] it must overcome ... the strong presumption in favor of judicial review of administrative action.' " Id. (quoting INS v. St. Cyr , 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ).
Although the Alvarez court found that it did not have subject matter jurisdiction over Alvarez's narrow challenge of ICE's discrete "decision to lodge a detainer against him" because such claims were "foreclosed by § 1252(g) and [the court's] decision in Gupta ," the Eleventh Circuit found that it did have jurisdiction to consider his claims that the ICE defendants'
*1251 action were "motivated by the singular intent to prolong his detention, not to execute his removal." Alvarez , 818 F.3d at 1204.
Plaintiffs' claims are distinguishable from Alvarez for largely the same reasons discussed above regarding Gupta . Unlike the plaintiff in Alvarez , Plaintiffs' claims do not "arise from" a decision or action by DHS to commence proceedings, adjudicate cases, or execute removal orders under the INA. Rather, Plaintiffs' claims arise from the County's independent decision to re-arrest and detain individuals based on non-mandatory requests from a federal agency.
Moreover, the Supreme Court has held that Section 1252(g) is not a "zipper clause" that "covers the universe of deportation claims;" instead, the provision is "much narrower." Reno v. American-Arab Anti-Discrimination Comm. , 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.' " Id. Illustrating the limited scope of Section 1252(g), the Court added:
There are of course many other decisions or actions that may be part of the deportation process-such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order... It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.
Id.
The Supreme Court has cautioned " 'that where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.' " Alvarez , 818 F.3d at 1201 (quoting Webster v. Doe , 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) ; accord Demore v. Kim , 538 U.S. 510, 517, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) ; see also Johnson v. Robison , 415 U.S. 361, 373-74, 94 S.Ct. 1160, 39 L.Ed.2d 389, (1974) ("[N]either the text nor the scant legislative history of [the provision] provides the 'clear and convincing' evidence of congressional intent required by this Court before a statute will be construed to restrict access to judicial review.") ).
Further, even assuming that the County's reading of Alvarez is correct-in that challenges to ICE's issuance of detainers are foreclosed by Section 1252(g) -Plaintiffs in this case do not challenge ICE's general policy and procedures for issuing detainers, ICE's specific decision to issue detainers for either C.F.C. or S.C.C., or any aspect of C.F.C. or S.C.C.'s immigration proceedings. Rather, Plaintiffs challenge the County's independent policy and practice of re-arresting individuals without probable cause based on a voluntary request from a federal agency.[6]
*1252 That such a request may come in the form of a detainer request from ICE does not bring Plaintiffs' claims within the realm of Section 1252(g).
Plaintiffs' claims against the County do not arise from DHS's decision to "commence proceedings" because the County cannot initiate, maintain, or engage in any proceedings for immigration purposes; Plaintiffs' claims against the County do not arise from DHS's decision to "adjudicate cases" because the County cannot adjudicate immigration cases; and Plaintiffs' claims against the County do not arise from DHS's decision to "execute removal orders" because the County cannot execute removal orders. 8 U.S.C. § 1252(g). Accordingly, the Court finds that it has subject matter jurisdiction to adjudicate Plaintiffs' claims that the County violated their Fourth and Fourteenth Amendment rights, along with their rights under Florida law, when it re-arrested them for civil immigration purposes pursuant to a detainer from ICE.
B. Claims for Declaratory Relief
As discussed above, Plaintiffs bring claims for declaratory relief against the County. Plaintiffs seek a declaratory judgment concerning both future and past conduct; they request a declaration that the County's policy and practice of arresting people on immigration detainers is unlawful, and that its re-arrest of Plaintiffs pursuant to detainers violated their rights under federal and Florida law. Plaintiffs also seek injunctive relief. The County insists that Plaintiffs lack standing to pursue any declaratory claims related to past conduct and that all such claims are moot.[7]
1. Plaintiffs Have Standing to Seek Prospective Declaratory Relief
"Standing is the threshold question in every federal case, determining the power of the court to entertain the suit." CAMP Legal Def. Fund, Inc. v. City of Atlanta , 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting Warth v. Seldin , 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ). Article III standing has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins , --- U.S. ----, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016), as revised (May 24, 2016) (citing Lujan v. Defenders of Wildlife , 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ). To satisfy the first "injury" element, the plaintiff must demonstrate that the injury affects the plaintiff in a personal and individual way. Id. at 1548 ; see also Valley Forge Christian College v. Americans United for Separation of Church and State, Inc. , 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (standing requires that the plaintiff "personally has suffered some actual or threatened injury").
"Article III of the U.S. Constitution 'limits the jurisdiction of federal courts to cases and controversies.' " Hartford Cas. Ins. Co. v. Intrastate Const. Corp. , 501 F. App'x 929, 937 (11th Cir. 2012) (quoting Christian Coal. of Fla., Inc. v. United States , 662 F.3d 1182, 1189 (11th Cir. 2011) ). "Similarly, 28 U.S.C. § 2201 *1253 provides that a declaratory judgment may only be issued in the case of 'actual controversy,' that is, a 'substantial continuing controversy between parties having adverse legal interests.' " Id. (quoting Emory v. Peeler , 756 F.2d 1547, 1551-52 (11th Cir. 1985) ). "This 'continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.' " Id. (quoting Emory , 756 F.2d at 1552 ). "Although a case may have involved an actual controversy initially, the case becomes moot 'when it no longer presents a live controversy with respect to which the court can give meaningful relief.' " Id. (quoting Zinni v. ER Solutions, Inc. , 692 F.3d 1162, 1166 (11th Cir. 2012) ; see also Christian Coal. of Fla., Inc. , 662 F.3d at 1190 (stating that, for purposes of Article III, "the controversy must be extant at all stages of review, not merely at the time the complaint is filed").
" 'A party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury.' " J W by & through Tammy Williams v. Birmingham Bd. of Educ. , 904 F.3d 1248, 1264 (11th Cir. 2018) (quoting Church v. City of Huntsville , 30 F.3d 1332 (11th Cir. 1994) ). "Whether a future injury is likely to occur in part depends on whether the misconduct alleged is authorized by or part of a government policy." Id. at 1264 (citing 31 Foster Children v. Bush , 329 F.3d 1255, 1266 (11th Cir. 2003) ). "When alleged misconduct is 'authorized or part of a policy, it is significantly more likely that the injury will occur again.' " Id. "On the other hand, if future injury is based on the occurrence of a random or unauthorized act, then the injury is 'too speculative' for standing purposes." Id.
Here, "treating the allegations in the complaint as true and liberally construing the complaint in favor of" Plaintiffs, this Court concludes that the amended complaint contains allegations "which could reasonably support a finding that [Plaintiffs] are likely to be subject to future injury from the application of the [policy] they challenge." See Malowney v. Fed. Collection Deposit Grp. , 193 F.3d 1342, 1347 (11th Cir. 1999) ("[l]n order for this Court to have jurisdiction to issue a declaratory judgment ... [Plaintiffs] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future.").
Accordingly, the Court finds that, at this early stage of the litigation, and viewing the facts alleged in the amended complaint in the light most favorable to Plaintiffs, they have alleged facts demonstrating that their injury is sufficiently likely to occur again and they therefore have standing to proceed with their claims for prospective declaratory and injunctive relief against the County. As explained below, however, Plaintiffs cannot seek declaratory relief solely on the grounds that the County's past conduct was unlawful.
1. Plaintiffs Do Not Have Standing to Seek Retrospective Declaratory Relief
"A case becomes moot-and therefore no longer a 'Case' or 'Controversy' for purposes of Article III-'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.' " Already, LLC v. Nike, Inc. , 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) (quoting Murphy v. Hunt , 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) ) (internal quotation marks omitted). The mootness doctrine is subject to certain exceptions, however. The Supreme Court has recognized "an exception to the general rule [of mootness] in cases that are 'capable of repetition, yet evading review.' "
*1254 Murphy , 455 U.S. at 482, 102 S.Ct. 1181 (quoting Weinstein v. Bradford , 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) ). To establish standing based on this doctrine, a plaintiff must show that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Id. (citations omitted); see also Fla. Right to Life, Inc. v. Lamar , 273 F.3d 1318, 1324, n.6 (11th Cir. 2001) (same).
To the extent that Plaintiffs request a declaration from this Court related to past conduct alone, such declaratory relief is moot and those requests are denied. See Emory , 756 F.2d at 1552 ; see also Malowney v. Fed. Collection Deposit Grp. , 193 F.3d 1342, 1348 (11th Cir. 1999) ("[A] declaration that the [challenged] statute as applied in the past to these plaintiffs is unconstitutional would [be] nothing more than a gratuitous comment without any force or effect.") (internal quotations omitted). Plaintiffs' amended complaint specifically highlights the fact that they seek, among other things, a declaration as to the County's past conduct. (DE 22 at 34) ("Plaintiffs respectfully request that this Court... [d]eclare that Defendant's detention of Plaintiffs and members of the proposed classes pursuant to ICE's detainer violated their Fourth Amendment right and rights under the Florida Constitution to be free from unreasonable seizure, violated their substantive due process right under the Fourteenth Amendment and under the Florida Constitution to be free from false imprisonment, and constituted unlawful imprisonment under Florida law.") (emphasis added). Accordingly, Plaintiffs' declaratory judgment claims for retrospective declaratory relief are dismissed as moot.
C. Counts I and II: Fourth and Fourteenth Amendment Monell Claims
Having reviewed the threshold issues of subject matter jurisdiction, standing, and mootness above, the Court now turns to the remaining arguments in the County's motion to dismiss. The Court will first analyze Plaintiffs' Fourth Amendment claim and then turn to their Fourteenth Amendment claim.
Plaintiffs bring Count I of this action pursuant to 42 U.S.C. § 1983, which provides a private right of action against anyone who subjects any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights or privileges secured by the Constitution and laws of the United States. Rehberg v. Paulk , 566 U.S. 356, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012). Plaintiffs argue that they have stated claims against the County under Monell v. Dep't of Social Services of the City of New York , 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), because the amended complaint alleges that Plaintiffs C.F.C. and S.C.C. were both re-arrested without probable cause after posting bond in their initial criminal matters pursuant to the County's new policy and practice of re-arresting individuals in its custody after their criminal custody has ended on the sole basis that the individuals are the subjects of immigration detainer requests. But for the County's policy of requiring MDCR to "honor all immigration detainer requests," Plaintiffs contend, C.F.C. and S.C.C. would not have been re-arrested by the County based on a purported civil immigration infraction in violation of their Fourth and Fourteenth Amendment rights. Thus, Plaintiffs contend that these allegations, taken as true, are sufficient to meet Monell's requirement that the County's policy and practice of honoring detainers was a proximate cause of their constitutional rights being *1255 violated and that the County acted under color of state law when it re-arrested them based on the detainers.
The County argues that it cannot be liable to Plaintiffs under 42 U.S.C. § 1983 because Plaintiffs have failed to allege facts sufficient to meet any of the elements required under Monell . (DE 23 at 9).
1. Monell Claims under Section 1983
"[T]o demonstrate a Monell claim, the plaintiff must show: (1) the violation of a federal right occurred; (2) the existence of a municipal policy or custom; and (3) a causal connection between the violation and the municipal policy or custom." Watts v. City of Hollywood, Fla. , 146 F.Supp.3d 1254, 1270 (S.D. Fla. 2015) (citing City of Canton, Ohio v. Harris , 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ). The plaintiff must also show that the constitutional violation occurred "under color of State law." Monell , 436 U.S. at 683, 98 S.Ct. 2018.
The Eleventh Circuit has held that, when reviewing Section 1983 claims, a district court must "provide appropriate time for discovery so that both parties may obtain the evidence necessary to present the facts and law relevant to the district court's determination of the alleged constitutional violations." Id. at 999 (reversing a district court's grant of summary judgment to the defendant, the City of Fort Lauderdale, and stating that discovery may be necessary to establish a constitutional violation in Section 1983 cases so that "[t]he district court ... will be in a position to determine if plaintiffs-appellants have established the first element of a prima facie case under section 1983, or if their allegations of constitutional violations warrant trial").
In Bannum, Inc. , the district court converted the defendants' motion to dismiss into a motion for summary judgment and found that defendants were entitled to summary judgment. Id. at 995. The Eleventh Circuit reversed on the grounds that the "case was terminated at a premature stage" and found that "[t]he district court ha[d] neither addressed plaintiffs-appellants' allegations of constitutional deprivations nor allowed discovery on these issues to enable plaintiffs-appellants to develop their case fully." Id. at 999.
a. Plaintiffs Have Sufficiently Alleged a Constitutional Violation
Plaintiffs argue that the County lacked authority under federal immigration laws to arrest them on behalf of ICE pursuant to a detainer and, therefore, the County violated C.F.C. and S.C.C.'s Fourth Amendment rights when it arrested them. The County, however, argues that it was authorized under federal law to cooperate with ICE by honoring the detainer requesting that Plaintiffs be held after they would have otherwise been released based solely on probable cause that C.F.C. and S.C.C. were removable from the U.S.
i. The INA and Immigration Case Authority
"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens[,]" Arizona v. United States , 567 U.S. 387, 394, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012), "subject to important constitutional limitations." Zadvydas v. Davis , 533 U.S. 678, 695, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). "Federal governance of immigration and alien status is extensive and complex." Arizona , 567 U.S. at 395, 132 S.Ct. 2492. The "comprehensive federal statutory scheme for regulation of immigration and naturalization" is embodied in the INA. See Buquer v. City of Indianapolis , No. 1:11-cv-708, 2013 WL 1332158, at *1 (S.D. Ind. Mar. 28, 2013) (quoting Chamber of Commerce of the United States v. Whiting , 563 U.S. 582, 587, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011) ).
*1256 "In the INA, 'Congress has specified which aliens may be removed from the United States and the procedures for doing so. Aliens may be removed [and are removable] if they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law. Removal is a civil, not criminal, matter. A principal feature of the removal system is the broad discretion exercised by immigration officials.' " Lopez-Aguilar , 296 F.Supp.3d at 969 (quoting Arizona , 567 U.S. at 396, 132 S.Ct. 2492 (citations omitted) ). Moreover, the Supreme Court has held that local law enforcement officials cannot unilaterally detain individuals based on mere suspicion of illegal presence in the United States. See Arizona , 567 U.S. 387, 132 S.Ct. 2492.
The INA provides that the Secretary of DHS may enter into a written agreement with a state or any political subdivision of a state, pursuant to which an officer or employee of the state or political subdivision, who is determined by the Secretary of DHS to be qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the U.S., may carry out such function at the expense of the state or political subdivision and to the extent consistent with state and local law. 8 U.S.C. § 1357(g)(1). Moreover, an administrative detainee held by local officials pursuant to such an agreement remains under ICE custody and control. See Parlak v. Baker , 374 F.Supp.2d 551, 557 (E.D. Mich. 2005), vacated on other grounds, Parlak v. U.S. Immigration and Customs Enforcement , 2006 WL 3634385 (6th Cir. 2006).
States and their political subdivisions are not required to enter into an agreement under Section 1357(g). 8 U.S.C. § 1357(g)(9). The statute also states that nothing in Section 1357(g) shall be construed to require an agreement in order for an officer or employee of the state or subdivision to "otherwise cooperate" with DHS in the identification, apprehension, detention or removal of aliens not lawfully present in the United States. 8 U.S.C. § 1357(g)(10)(B) ; see also Abriq v. Hall , 295 F.Supp.3d 874, 880 (M.D. Tenn. 2018) (providing an overview of permissible cooperation between federal and state authorities under Section 1357(g) ).
Nonetheless, "the system Congress created ... specifies limited circumstances in which state officers may perform the functions of an immigration officer." Arizona , 567 U.S. at 408, 132 S.Ct. 2492 ; Buquer , 2013 WL 1332158, at *9 ("[C]ircumstances [in which state enforcement officers may be authorized to assist the federal government in immigration matters] are limited and clearly defined under federal law."). The "principal example" of permissible cooperation identified in Arizona is a formal, written agreement under Section 1357(g). Arizona , 567 U.S. at 408, 132 S.Ct. 2492 ; see 8 U.S.C. § 1357(g)(1)-(2) ; Buquer , 2013 WL 1332158, at *2. Under such an agreement, a state officer is "subject to the Attorney General's direction and supervision[,]" Arizona , 567 U.S. at 409, 132 S.Ct. 2492 (citing 8 U.S.C. § 1357(g)(3) ), receives training in the "significant complexities involved in enforcing federal immigration law," id. (citing 8 U.S.C. § 1357(g)(2), 8 C.F.R. §§ 287.5(c), 287.1(g) ), and requires written certification that adequate training has been completed. Id. (citing 8 U.S.C. § 1357(g)(2) ).
The Arizona Court noted other, specific examples of permissible cooperation as defined under the INA: authorization by the Secretary of DHS in response to an actual or imminent "mass influx of aliens arriving off the coast of the United States," id. at 408-09, 132 S.Ct. 2492 (quoting 8 U.S.C. § 1103(a)(10) ); arrest "in [the] specific circumstance"
*1257 of a noncitizen who has been convicted of a felony, deported, and returned, only "after consultation with the Federal Government," id. at 409, 132 S.Ct. 2492 (citing 8 U.S.C. § 1252(c) ); and authorization "to arrest for [the federal crime of] bringing in and harboring certain aliens[.]" Id. at 409, 132 S.Ct. 2492 (citing 8 U.S.C. § 1324(c) ).
Because the INA provides that a formal, written agreement under Section 1357(g) is not required for any state officer "otherwise to cooperate with the [Secretary of DHS] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States," the Arizona Court also considered what would constitute permissible cooperation under this provision. 8 U.S.C. § 1357(g)(10)(B), cited in Arizona , 567 U.S. at 410, 132 S.Ct. 2492. The Court found that "situations where States participate in a joint task force with federal officers, provide operational support in executing a warrant, or allow federal immigration officials to gain access to detainees held in state facilities," would be consonant with this provision of the INA. Arizona , 567 U.S. at 410, 132 S.Ct. 2492. The Court also noted, as another example of permissible cooperation, communication authorized by statute. Id . ("State officials can also assist the Federal Government by responding to requests for information about when an alien will be released from their custody."); see also Lopez-Aguilar , 296 F.Supp.3d at 973-74 (finding that "federal permission for state-federal cooperation in immigration enforcement does not embrace detention of a person based solely on either a removal order or an ICE detainer... because [s]uch detention exceeds the limited circumstances in which state officers may enforce federal immigration law") (quotations omitted).
The County relies on a case recently decided by the U.S. Court of Appeals for the Fifth Circuit, City of El Cenizo v. Texas , 890 F.3d 164 (5th Cir. 2018).[8] El Cenizo involved a facial challenge to the constitutionality of several provisions of Senate Bill 4 ("SB4"), a law passed by the Texas legislature related to local immigration enforcement activities. The Fifth Circuit reviewed the case on an appeal by all parties challenging the district court's entry of an order granting a preliminary injunction as to several of SB4's provisions, including a provision mandating that local officers comply with detainer requests. El Cenizo , 890 F.3d at 174.
Although El Cenizo contains dicta discussing the Fourth Amendment implications of honoring detainer requests, the procedural posture is markedly different and undermines its applicability. The Fifth Circuit stresses throughout its opinion that plaintiffs had a stringent burden, not only because of the preliminary injunction standard,[9] but also because of the "exacting standard" of bringing a "pre-enforcement facial challenge." Id. at 187. In El Cenizo , no discovery had yet been taken and no facts had been adduced other than those alleged in the complaint. The Fifth *1258 Circuit noted that "such a challenge is the most difficult to mount successfully" because "it is not enough for the plaintiffs to demonstrate that the ICE-detainer mandate will often cause Fourth Amendment violations." Id. Instead, plaintiffs "must establish that the mandate is unconstitutional in all of its applications." Id. (internal quotations and citations omitted). In analyzing whether the "ICE-detainer mandate" in SB4 facially violated the Fourth Amendment, the Fifth Circuit stated that "plaintiffs must establish that every seizure authorized by the ICE-detainer mandate violates the Fourth Amendment" and concluded that plaintiffs could not satisfy that "exacting standard." Id.
This Court does not find the analysis in El Cenizo persuasive or helpful in deciding the issues in the County's motion to dismiss. The procedural posture there-reviewing the grant of a preliminary injunction enjoining the enforcement of a state law-does not address the very different standard involved here-reviewing a motion to dismiss-where the Court takes as true all well-pled allegations in the amended complaint and views all facts in the light most favorable to Plaintiffs.
ii. The Fourth Amendment
The Fourth Amendment provides that the right of the people to be secure against unreasonable searches and seizures shall not be violated. U.S. Const. amend. IV. Under the Fourth Amendment, "the predicate for an arrest is probable cause to believe the arrestee is committing or has committed a crime." Lopez-Aguilar , 296 F.Supp.3d at 975-76 (citing Devenpeck v. Alford , 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ; Brown v. Texas , 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) ; Dunaway v. New York , 442 U.S. 200, 212-13, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) ). Because "it is not a crime for a removable alien to remain present in the United States[,] [i]f the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." Arizona , 567 U.S. at 407, 132 S.Ct. 2492.
A warrantless arrest is constitutional under the Fourth Amendment only when it is made with probable cause. See Beck , 379 U.S. at 91, 85 S.Ct. 223. "Probable cause exists 'when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " Cozzi , 892 F.3d at 1293-94 (quoting Lee v. Ferraro , 284 F.3d 1188, 1195 (11th Cir.2002) (internal quotation marks omitted) ); see also Gerstein v. Pugh , 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) ("[W]e hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest."). "Probable cause exists if, under the totality of circumstances, there is a fair probability that ... an illegal act is taking place." United States v. Thompson , 2012 WL 1161609, at *3 (N.D. Tex. Apr. 9, 2012) (citing United States v. Newman , 472 F.3d 233, 236-37 (5th Cir. 2006) )."
The "seizure" of individuals for known or suspected immigration violations can violate the Fourth Amendment when conducted under color of state law because it is not a crime for a person who is removable to remain present in the United States. Lopez-Aguilar , 296 F.Supp.3d at 974-75. Only when acting under color of federal authority-that is, as directed, supervised, trained, certified, and authorized by the federal government-may state officers effect constitutionally reasonable seizures for civil immigration violations. Id. at 977-98. "[K]nowledge that an individual *1259 has committed a civil immigration violation does not constitute reasonable suspicion or probable cause of a criminal infraction" and therefore cannot justify a Fourth Amendment seizure. Id .
iii. The County Lacked Authority under Federal Law to Arrest C.F.C. or S.C.C. for a Civil Immigration Violation
The Court agrees with Plaintiffs' contention that, if "otherwise cooperate" under Section 1357(g)(10), a catch-all provision, were read to allow local law enforcement to arrest individuals for alleged civil immigration violations at the request of ICE, the training, supervision and certification pursuant to a formal agreement between DHS and state officers described in the remaining provisions of Section 1357(g) would be rendered meaningless. See Hibbs v. Winn , 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004) (holding that the "rule against superfluities" means that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant") (quotations and citation omitted); see also Marx v. Gen. Revenue Corp. , 568 U.S. 371, 386, 133 S.Ct. 1166, 185 L.Ed.2d 242 (2013) ("The canon [against surplusage] is strongest when an interpretation would render superfluous another part of the same statutory scheme."); City of Chicago v. Sessions , 888 F.3d 272, 277, 285 (7th Cir. 2018) (holding that the Attorney General did not have authority to place certain conditions on grants to "sanctuary cities" because "[a] clause in a catch-all provision at the end of a list of explicit powers would be an odd place indeed to put a sweeping power to impose any conditions on any grants") (emphasis in original). Accordingly, the Court finds that Plaintiffs have alleged plausible facts to support their contention that the County violated their Fourth Amendment rights when it arrested C.F.C. and S.C.C. based on a detainer and without probable cause that either of them had committed a crime. Plaintiffs have plausibly alleged that their arrest by the County for civil immigration purposes fell outside the scope of permissible "cooperation" under Section 1357(g).
Numerous courts have determined that when local law enforcement agencies hold someone pursuant to a detainer-and without separate probable cause that the person has committed a crime-such detention gives rise to a Fourth Amendment claim against the local law enforcement. See, e.g. , Lunn v. Commonwealth , 477 Mass. 517, 535-37, 78 N.E.3d 1143, 1159 (2017) (finding that state officers were not authorized to arrest people for civil immigrations violations under Massachusetts common law and thus had no authority to "to arrest and hold an individual solely on the basis of a Federal civil immigration detainer" because "it is not reasonable to interpret § 1357(g)(10) as affirmatively granting authority to all State and local officers to make arrests that are not otherwise authorized by State law"); Ochoa v. Campbell , 266 F.Supp.3d 1237, 1259 (E.D. Wash. 2017) ("Courts around the country have held that local law enforcement officials violate the Fourth Amendment when they temporarily detain individuals for immigration violations without probable cause."); Morales v Chadbourne , 793 F.3d 208, 216 (1st Cir. 2015) (finding "clear law" establishing that the constitution requires probable cause for the immigration detention that a detainer requests); Abriq , 295 F.Supp.3d at 880-81 (finding that the defendant, a local law enforcement agency, lacked probable cause to detain the plaintiff pursuant to an immigration detainer); Lopez-Aguilar v. Marion County Sheriff's Department , 296 F.Supp.3d 959, 969-70 (S.D. Ind. 2017) (approving the parties' stipulated judgment declaring that "seizures by [Marion County] based solely on *1260 detention requests from ICE (in whatever form) or removal orders from an immigration court violate the Fourth Amendment unless ICE supplies, or [Marion County] otherwise possess[es], probable cause that the individual to be detained has committed a criminal offense").
In Lopez-Aguilar , the county argued that it held the plaintiff based on a detainer because it was required to "cooperate" with federal immigration officials. 296 F.Supp.3d at 969-70. The Lopez-Aguilar court held that "the full extent of federal permission for state-federal cooperation in immigration enforcement does not embrace detention of a person based solely on either a removal order or an ICE detainer." Id. at 973. "Such detention exceeds the 'limited circumstances' in which state officers may enforce federal immigration law and thus violates 'the system Congress created.' " Id . (citations omitted).
The Lopez-Aguilar court also held that "seizures conducted solely on the basis of known or suspected civil immigration violations violate the Fourth Amendment when conducted under color of state law." Id. at 975 (citing Santos v. Frederick Cnty. Bd. of Comm'rs , 725 F.3d 451, 464-68 (4th Cir. 2013) ; Melendres v. Arpaio , 695 F.3d 990, 1001 (9th Cir. 2012) ). "[E]ven in cases where ICE has or supplies probable cause to believe a noncitizen is deportable for a civil immigration violation, such probable cause, without more, does not justify the seizure of a person under color of state law." Id. at 976. The Lopez-Aguilar court noted that "[i]n general, civil matters do not justify arrests or custodial seizures amounting to arrests." Id. (citing Doe v. Metro. Police Dep't , 445 F.3d 460, 469 (D.C. Cir. 2006) ("Because the four Jane Does were arrested for a civil offense, their claims state a cause of action under the Fourth Amendment.") ). "Two exceptions to this general rule are seizures under writs of bodily attachment or bench warrants for civil contempt of court, see Armstrong v. Squadrito , 152 F.3d 564, 567, 569-70 (7th Cir. 1998) (citations omitted), and seizures to effect involuntary commitments, or 'mental-health seizures,' in accordance with 'the governing [state statutory] legal standard.' " Id . (quoting Bruce v. Guernsey , 777 F.3d 872, 875-76 (7th Cir. 2015) ). "The state's interests in making the two types of permitted civil seizures noted above similarly lie at the heart of its reserved police power: ensuring compliance with, and the functioning of, its courts, in the case of civil contempt seizures; and protecting a person from harming himself or others, in the case of mental-health seizures." Id. at 976-77 (citing Bruce , 777 F.3d at 876 ("Generally speaking, a mental-health seizure is lawful if there is probable cause to believe that the person seized is a danger to herself or others."). "In the case of seizures for civil immigration violations, by contrast, the state has no legitimate interest in effecting the seizure itself." Id. at 977 (citing Arizona , 567 U.S. at 409-10, 132 S.Ct. 2492 (quoting Truax v. Raich , 239 U.S. 33, 42, 36 S.Ct. 7, 60 L.Ed. 131 (1915) ("The authority to control immigration-to admit or exclude aliens-is vested solely in the Federal government.") ) ).
In the immigration context, the Lopez-Aguilar court found, "[t]he state has no interest in ensuring the 'suspect's' appearance at 'trial,' because the state may not adjudicate deportability; no interest in preventing the noncitizen from continuing his offense, because the state may not deport him; and no interest in investigating the incident, because evidence from such investigation will relate only to an adjudication the state may not conduct of the suitability of a remedy the state may not order." Id. "Where history is silent or equivocal," the court explained, "the balance of interests weighing so decisively in *1261 favor of individual privacy requires that this kind of unauthorized seizure of persons be disapproved." Id. Thus, "[o]nly when acting under color of federal authority, that is, as directed, supervised, trained, certified, and authorized by the federal government, may state officers effect constitutionally reasonable seizures for civil immigration violations." Id. Accordingly, "detainers, standing alone, do not supply the necessary direction and supervision." Id .
Following Arizona , two federal courts of appeals have reached the same conclusion as the court in Lopez-Aguilar . In Melendres v. Arpaio , plaintiffs challenged a county sheriff's department's program of immigration enforcement on Fourth Amendment grounds. 695 F.3d at 994-95 (affirming grant of preliminary injunction). The Ninth Circuit held that plaintiffs were "likely to succeed on their claim that without more, the Fourth Amendment does not permit a stop or detention based solely on unlawful presence." Id. at 1000.
The Melendres court noted that, although the defendant sheriff's department "previously had authority... to enforce civil immigration law" through an agreement under Section 1357(g), that agreement had been rescinded in relevant part. Id. at 1000-01. In the absence of authority pursuant to an agreement under Section 1357(g), the court held that the sheriff's department "must enforce only immigration-related laws that are criminal in nature[.]" Id. at 1001. State officers are simply "not empowered to enforce civil immigration violations" and their attempts to do so are constitutionally unreasonable. Id. ; Melendres v. Arpaio , 989 F.Supp.2d 822, 895 (D. Ariz. 2013) (granting permanent injunction) ("[W]hen [a sheriff's deputy] detains a vehicle's occupant(s) because [the] deputy believes that the occupants are not legally present in the country, but has no probable cause to detain them for any other reason, the deputy violates the Fourth Amendment rights of the occupants.").
Similarly, in Santos , plaintiff challenged her seizure by two sheriff's deputies after ICE informed the deputies of an outstanding warrant for plaintiff's deportation. 725 F.3d at 458. A Fourth Circuit panel reversed the district court's grant of summary judgment in defendants' favor on plaintiff's municipal liability claim because "knowledge that an individual has committed a civil immigration violation does not constitute reasonable suspicion or probable cause of a criminal infraction," and therefore cannot justify a Fourth Amendment seizure. Id. at 470. The Santos court determined that a detainer was issued for plaintiff only after the Fourth Amendment violation had occurred and restricted its holding to the proposition that, "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected violations of federal immigration law." Id. at 465-66. Although the holding was narrow, the Fourth Circuit noted the general lack of state authority over civil immigration violations. Id. at 459, 464.
Citing both Melendres and Santos , the Lopez-Aguilar court held that (1) "seizures conducted solely on the basis of known or suspected civil immigration violations violate the Fourth Amendment when conducted under color of state law," and (2) "federal permission to cooperate in federal immigration enforcement does not permit a state to require its law enforcement officers to comply with removal orders, standing alone, or ICE detainers, standing alone." 296 F.Supp.3d at 978.
The Court agrees with the above cases and finds that Plaintiffs have plausibly alleged that the County was not authorized *1262 by federal law to arrest C.F.C. and S.C.C. for civil immigration violations and, therefore, because they were arrested without probable cause of a crime, the County violated their Fourth Amendment rights.
iv. The County Lacked Authority under State Law to Arrest C.F.C. or S.C.C. for a Civil Immigration Violation
The County maintains that it had authority under two provisions of Florida law to detain C.F.C. and S.C.C. on behalf of the federal government for alleged civil immigration offenses. Plaintiffs respond that these state law provisions are not independent sources of authority for the County to arrest individuals for civil immigration violations.
a) Florida Statute Section 950.03
First, the County argues that it had authority to arrest C.F.C. and S.C.C. under Florida Statute Section 950.03, which provides that "[t]he keeper of the jail in each county within this state shall receive into his or her custody any prisoner who may be committed to the keeper's charge under the authority of the United States and shall safely keep each prisoner according to the warrant or precept for such commitment until he or she is discharged by due course of law of the United States." Fla. Stat. § 950.03. Plaintiffs contend that this statute-enacted in 1847-is irrelevant here because, rather than operating as an independent source of arrest authority, it instead authorizes jailers to hold prisoners who have already been validly arrested by federal officers. (DE 32 at 17-18). Moreover, the County agrees that C.F.C. and S.C.C. were in its sole custody-not being "receive[d] into" its custody-when they were detained pursuant to the detainer requests from ICE. (DE 23 at 2, 5).
The Court agrees with Plaintiffs that Section 950.03 is not an independent source of authority under which the County could lawfully arrest C.F.C. and S.C.C. solely on the basis of a detainer. As discussed above, the County did not have authority under federal law to arrest C.F.C. and S.C.C. based on a detainer, and this archaic Florida statute adds nothing to the County's arrest authority. Accordingly, the Court finds that Section 950.03 does not support the County's arrest of C.F.C. and S.C.C. pursuant to a detainer based on alleged civil immigration violations.
b) Florida Statute Section 901.18
The County also points to Florida Statute Section 901.18 for the proposition that it is immune from civil liability under Florida law because the County's arrest of C.F.C. and S.C.C. amounted to "aid[ing] a peace officer." (DE 23 at 18). Section 901.18 provides that "[a] person commanded to aid a peace officer shall have the same authority to arrest as that peace officer and shall not be civilly liable for any reasonable conduct in rendering assistance to that officer." Fla. Stat. § 901.18. Plaintiffs argue that the County's position with respect to this provision of Florida law is untenable because the County's interpretation would "require every person who is asked to make an arrest to make that arrest" and, thus, there would be no limit to the arrests that federal agencies could demand of local officers. (DE 32 at 19).
The Court again agrees with Plaintiffs' reading of the statute. It cannot be that Section 901.18 applies in the context of federal officials coordinating with the County to arrest individuals for civil immigration purposes. If an ICE official (or any other federal officer) is a "peace officer" under Section 901.18, then ICE officials could "command" the County and its officers to arrest individuals-pursuant to detainers or, presumably, for any other reason-and the County would be required to comply by "render[ing] assistance as directed *1263 by the officer." Fla. Stat. § 901.18. This reading of the statute defies both fundamental Tenth Amendment principles and also the Parties' consensus that detainers are voluntary requests because it would allow federal officers to command local law enforcement to assist with arrests, including civil immigration arrests. See New York v. United States , 505 U.S. 144, 175, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (holding that "federal action [that] would 'commandeer' state governments into the service of federal regulatory purposes ... [is] inconsistent with the Constitution's division of authority between federal and state governments"); see also Printz v. United States , 521 U.S. 898, 904, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (holding invalid a federal law that "purport[ed] to direct state law enforcement officers to participate, albeit only temporarily, in the administration of a federally enacted regulatory scheme"). Accordingly, the Court finds that Section 901.18 is not relevant to the Court's analysis of Plaintiffs' claims and, at the very least, cannot serve the County's proffered purpose of immunizing it from liability for a Fourth Amendment violation.
For the reasons set forth above, the Court finds that Plaintiffs have plausibly alleged that their Fourth Amendment rights were violated when the County arrested them pursuant to a detainer because the County was not authorized under either state or federal law to effectuate an arrest without a warrant or probable cause that C.F.C. and S.C.C. had committed a crime. See Kingsland v. City of Miami , 382 F.3d 1220, 1226 (11th Cir. 2004) ("A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim."); see also Abriq , 295 F.Supp.3d at 880 (finding unpersuasive defendants' argument that local law enforcement was acting under color of federal authority when it detained plaintiff because it was cooperating with ICE under Section 1357(g)(10) ).
b. Plaintiffs have Sufficiently Alleged a Policy or Practice
Plaintiffs have also alleged facts sufficient to state a plausible claim that the County had a policy and practice of re-arresting all individuals for which it received a detainer request from ICE. "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." Connick v. Thompson , 563 U.S. 51, 60-61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (citing Monell , 436 U.S. at 691, 694, 98 S.Ct. 2018 ). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Id. (citations omitted). To adequately allege a Monell policy or practice claim, Plaintiffs must " 'plead[ ] factual content that allows the court to draw the reasonable inference' that the [County] maintained a policy, custom, or practice" that contributed to the alleged constitutional violations. McCauley v. City of Chicago , 671 F.3d 611, 616 (7th Cir. 2011) (citing Iqbal , 129 S.Ct. at 1949 ; Monell , 436 U.S. at 694, 98 S.Ct. 2018 ). "Under section 1983, local governments can be sued directly for monetary, declaratory or injunctive relief, when 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' and when constitutional deprivations result from 'governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels.' " Bannum, Inc. , 901 F.2d at 997 (quoting Monell , 436 U.S. at 690-91, 98 S.Ct. 2018 ).
*1264 Plaintiffs alleged that since January 26, 2017, when Miami-Dade County Mayor Gimenez issued his directive ordering MDCR to "honor all immigration detainer requests"-subsequently ratified by the Board in a resolution-the County has honored all detainers from ICE by re-arresting individuals based on purported civil immigration violations after they would otherwise be entitled to release. Moreover, the County has not disputed that, at the time of C.F.C. and S.C.C.'s arrests, the County was honoring all ICE detainers.
c. Plaintiffs have Sufficiently Alleged the County's Policy or Practice was the "Moving Force" of Their Constitutional Injuries
Next, Plaintiffs have sufficiently alleged that the County's policy and practice of honoring all detainer requests was the "moving force" behind their Fourth Amendment injuries. The third element of a Monell claim requires that a plaintiff prove that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." Monell , 436 U.S. at 694, 98 S.Ct. 2018. The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd. of Cnty. Comm'rs v. Brown , 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
Here, Plaintiffs allege, and the County concedes, that detainers are voluntary requests from ICE that the County has deliberately chosen to honor. In fact, Plaintiffs allege that for the period from 2013 until the Board's resolution in 2017, the County did not accede to these detainer requests. Plaintiffs allege that the County's policy and practice of complying with detainer requests was the moving force, i.e. , the proximate cause, of their constitutional rights being violated because, absent the County's independent decision to honor detainers, C.F.C. and S.C.C. would not have been re-arrested after posting bond for their original criminal matters.
d. Plaintiffs have Sufficiently Alleged the County Acted under Color of State Law
Plaintiffs have also alleged facts sufficient to plausibly claim that the County acted under color of state law, rather than federal law. The Eleventh Circuit has held that "[i]n order to prevail in a civil rights action under section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.' " Bannum, Inc. v. City of Fort Lauderdale , 901 F.2d 989, 996-97 (11th Cir. 1990) (quoting Dollar v. Haralson County , 704 F.2d 1540, 1542-43 (11th Cir. 1983), cert. denied , 464 U.S. 963, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983) ) (citations omitted).
As discussed above, because Section 1357(g)(10) is not an independent source of arrest authority, the County's argument that it acted under color of federal law when it "cooperated" with ICE by arresting C.F.C. and S.C.C. is unpersuasive. Because the County made a voluntary decision to re-arrest individuals for alleged civil immigration violations without probable cause of a crime, Plaintiffs have plausibly alleged that the County acted under color of state law when it violated their Fourth Amendment rights.
e. Plaintiffs have Sufficiently Alleged Deliberate Indifference
Finally, Plaintiffs have also sufficiently alleged that the County's policy and practice of honoring all detainer requests from ICE reflected the County's *1265 deliberate indifference to the possibility that constitutional violations would result from that policy and practice. To succeed on a facial challenge to a policy, a plaintiff "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." Id. at 411, 117 S.Ct. 1382 ; see also Piotrowski v. City of Houston , 237 F.3d 567, 579 (5th Cir. 2001) ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result.") (quoting Brown , 520 U.S. at 407, 117 S.Ct. 1382 ).
Although the Parties dispute whether Plaintiffs are required to prove deliberate indifference in this context, the Court need not decide that issue now. Even if such allegations are required to withstand a motion to dismiss, Plaintiffs have stated facts sufficient to satisfy the "deliberate indifference" requirement under Monell by alleging that the County knew-based on statements the County made in the 2016 resolution discussed in Section I above-that holding individuals pursuant to detainer requests from ICE violates their Fourth Amendment rights.
Liberally construing Plaintiffs' allegations in their favor and granting them the benefit of all reasonable inferences to be derived from the facts alleged, Twombly , 550 U.S. at 575, 127 S.Ct. 1955, the Court finds that they have stated a viable Fourth Amendment claim against the County under Section 1983. Accordingly, the County's motion to dismiss Count I is denied.
f. Plaintiffs' Fourteenth Amendment Claim Must be Dismissed
Plaintiffs also allege that their detention constituted a significant deprivation of life and liberty that requires due process protection under the Fourteenth Amendment. The County argues that Plaintiffs have failed to state a Fourteenth Amendment Monell claim under Section 1983. A recent Eleventh Circuit decision, Alcocer v. Mills , 906 F.3d 944 (11th Cir. 2018), is particularly instructive on this issue.
In Alcocer , the Eleventh Circuit stated that, when reviewing a Section 1983 case, the court must "begin [its] analysis by identifying 'the precise constitutional violation' the defendant has allegedly committed." Alcocer , 906 F.3d at 952 (quoting Franklin v. Curry , 738 F.3d 1246, 1250 (11th Cir. 2013) (per curiam ) ). In Alcocer , the plaintiff was "arrested and detained for the misdemeanor offense of driving with a suspended license." Id. at 947. "After Alcocer satisfied the bond requirements, the [ ] County jail continued to detain her because jail officers became suspicious that she might be present illegally in the United States" because of a fax the jail received from ICE stating " '[ICE] RECORDS INDICATE THAT THIS SUBJECT IS NOT LEGALLY IN THE UNITED STATES.' " Id. at 949 (alteration in original). Thus, "the district court concluded that Alcocer remained incarcerated because Defendants engaged in a second detention of her for being an illegally present alien." Id. at 952.
The Eleventh Circuit opined that "this fact pattern"-substantially similar to the facts here-"potentially presents two possible rights candidates for driving [the Court's] analysis: (1) the Fourth Amendment right to be free from unreasonable seizures, Case v. Eslinger , 555 F.3d 1317, 1326 (11th Cir. 2009), and (2) the Fourteenth Amendment due-process right to be free from continued detention after law enforcement should have known that the detained person was entitled to release, West v. Tillman , 496 F.3d 1321, 1327 (11th Cir. 2007) (per curiam )." Id.
After reviewing relevant precedent and the specific circumstances surrounding Alcocer's *1266 detention, the Eleventh Circuit found that, because the "facts that might have underpinned the conclusion that Alcocer was in the United States illegally were not a part of the probable cause that supported Alcocer's original detention ... independent probable cause was required to warrant Alcocer's continued detention after she had satisfied all conditions of her bond on her original detention." Id. at 954-55 (citing Morales , 793 F.3d at 217 ). Thus, "[t]he Fourth Amendment provide[d] an explicit source of protection for the right that Defendants allegedly violated" and was the appropriate governing constitutional analysis. Id. at 955 ("Where the Constitution 'provides an explicit textual source of constitutional protection' for the violation alleged, we apply the analysis that constitutional provision requires, rather than the analysis dictated by 'the more generalized notion of substantive due process.' ") (quoting Graham v. Connor , 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal quotations omitted) ); see also Abriq , 295 F.Supp.3d at 882 (finding that plaintiff's Fourteenth Amendment claim must be dismissed because "[i]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendments, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process"); Mercado v. Dallas Cty., Texas , No. 3:15-CV-3481-D, 2016 WL 3166306, at *9 (N.D. Tex. June 7, 2016) (same).
Here, as in Alcocer , Plaintiffs allege that their continued detention resulted from information provided by ICE to the County-albeit in the form of a detainer-that caused the County to re-arrest them for alleged civil immigration violations unrelated to the criminal matters for which they were initially arrested. Thus, "independent probable cause was required to warrant [Plaintiffs'] continued detention after [they] had satisfied all conditions of [their] bond on [their] original detention." See Alcocer , 906 F.3d at 954. Because the Fourth Amendment "provides an explicit textual source of constitutional protection" for the violation Plaintiffs allege, Graham , 490 U.S. at 395, 109 S.Ct. 1865, this Court must "apply the analysis that constitutional provision requires, rather than the analysis dictated by 'the more generalized notion of substantive due process.' " Alcocer , 906 F.3d at 954 (quoting Graham , 490 U.S. at 395, 109 S.Ct. 1865 ). Thus, Plaintiffs' Section 1983 claim against the County must proceed under a Fourth Amendment analysis, which the Court has conducted above, and Count II of the amended complaint is dismissed.
D. Count III: False Imprisonment under Florida Law
The County also argues that Count III of the amended complaint must be dismissed because Plaintiffs have not stated any facts alleging that the County detained them without "legal authority or color of authority," which is a required element of a claim for false imprisonment under Florida law. (DE 23 at 16) (quotations omitted). The County argues that it had the requisite legal authority under federal law to cooperate with federal immigration officials and maintain custody of C.F.C. and S.C.C. for a brief period to allow DHS to assume custody of them. Id. The County also contends that it had authority under a Florida statute to detain individuals on behalf of the federal government. Id. at 16-17. Plaintiffs respond that the County did not have authority under either federal or state law to detain them for civil immigration violations. (DE 32 at 25-26).
Under Florida law, "the tort of false imprisonment is defined as 'the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation *1267 of his liberty.' " Johnson v. Barnes & Noble Booksellers, Inc. , 437 F.3d 1112, 1116 (11th Cir. 2006) ("In a false imprisonment action the plaintiff is required only to establish imprisonment contrary to his will and the unlawfulness of the detention."). To state a cause of action for false imprisonment, a plaintiff must establish four elements: "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." Harder v. Edwards , 174 So.3d 524, 530 (Fla. 4th DCA 2015) (quoting Montejo v. Martin Mem'l Med. Ctr., Inc. , 935 So.2d 1266, 1268 (Fla. 4th DCA 2006) ).
The Court finds that Plaintiffs have alleged facts sufficient to state a plausible claim for false imprisonment. First, Plaintiffs adequately allege, as discussed fully in Section Ill.C.1.a, that the County unlawfully detained them pursuant to a detainer because the County acted without either federal or state authority to arrest them for civil immigration violations. Plaintiffs also allege that (1) they were detained against their will, because both C.F.C. and S.C.C. alleged that they posted bond for their original offenses; and (2) such detention was unreasonable and unwarranted because the County did not have probable cause that either C.F.C. or S.C.C. had committed a crime when it re-arrested them.
Taking as true all of the facts alleged by Plaintiffs, as the Court must at this stage, they have pled facts sufficient to state a plausible claim for false imprisonment under Florida law. Thus, the County's motion to dismiss Count III is denied.
E. Counts IV and V: Violations of the Florida Constitution
The County argues that Plaintiffs' claims under the Florida constitution must also fail for the same reasons as Plaintiffs' claim for false imprisonment. (DE 23 at 16). Plaintiffs' claims under Article 1, Section 12 of the Florida Constitution -governing searches and seizure-is analyzed consistent with the corresponding provisions of the Fourth Amendment to the U.S. Constitution. See FLA. CONST. , art. 1, § 12 ("This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court."); see also Daniels v. Cochran , 654 So.2d 609, 612 (Fla. 4th DCA 1995) ("Florida's constitutional right to be free from unreasonable searches and seizures, article I, section 12 of the Florida Constitution, requires us to interpret this right in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court."). Thus, for the same reasons stated above regarding Plaintiffs' Fourth Amendment claim under the U.S. Constitution, the County's motion to dismiss Count IV is denied.
Article I, Section 9 of the Florida Constitution states that no person shall be deprived of life, liberty or property without due process of law. FLA. CONST. , art. 1, § 9. Although the Court cannot find (and the Parties have not cited) any cases interpreting Florida law in the context of a plaintiff claiming that a detention violated his "liberty interest" to a "lawful release," Courts appear to interpret this provision of the Florida Constitution consistent with the Fifth Amendment to the U.S. Constitution. See, e.g., Florida v. Powell , 559 U.S. 50, 130 S.Ct. 1195, 175 L.Ed.2d 1009 (2010) ; Barrett v. State , 862 So.2d 44, 47 (Fla. 2d DCA 2003) ("The due process language used in the Florida and United States Constitutions is virtually identical."). Because the Parties have not fully briefed the issue of whether Count V-a due process claim under *1268 Article I, Section 9 of the Florida Constitution -can proceed, Defendant's motion to dismiss Count V is granted and Count V is dismissed without prejudice.
F. The Federal Government is Not an Indispensable Party
Rule 19 of the Federal Rules of Civil Procedure requires that, under certain circumstances, a person must be joined as a party in an action. Fed. R. Civ. P. 19(a). Specifically, a party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties" or "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Id. In order to determine whether this case must be dismissed, the Court must first apply Rule 19(a) to ascertain "whether the person in question is one who should be joined if feasible." Becker Landscaping & Irrigation, Inc. v. EGI, Ltd. , No. 08-14214-CIV, 2010 WL 11504517, at *1 (S.D. Fla. Jan. 21, 2010) (citing Focus on the Family v. Pinellas Suncoast Transit Authority , 344 F.3d 1263, 1280 (11th Cir. 2003) ).
The County argues that, unless the federal government is joined as an indispensable party: (1) the Court may not be able to accord complete relief to the parties because the proximate cause for the alleged harm is not a party to the case; (2) the County could be subject to incurring inconsistent obligations because it is the sole defendant but was acting under the authority of a non-party; and, (3) the individual with knowledge of the basis for the detainer's probable cause determination (the ICE officer) is not a party. (DE 11, at 17). Plaintiffs, on the other hand, contend that the County will not be subject to inconsistent obligations because: (1) the County owes no legal duty to the federal government to comply with voluntary detainer requests; (2) the County's independent decision to honor detainer requests does not give the federal government any legally-protected interest at stake in this case; and (3) the Court's decision would not interfere with any legal obligation of the United States.
The Court agrees with Plaintiffs that the federal government is not an indispensable party to this action. First, based on the allegations in the amended complaint, the Court can accord complete relief to the current Parties without additional litigants being joined. Plaintiffs challenge the County's policy of complying with voluntary requests from a federal agency as unconstitutional. Taking these allegations as true, it would not be necessary to join the federal government in order to rule on the constitutionality of the County's policy or whether the policy caused Plaintiffs' Fourth Amendment rights to be violated.
Further, although the United States filed a statement of interest in this matter (DE 27), there is nothing in the record at this stage to suggest that the U.S. Government is "so situated that disposing of the action" in its absence would "impair or impede the [Government]'s ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a). While the U.S. Government may have a legitimate interest in carrying out immigration enforcement, it certainly does not have a legitimate interest in ensuring that the County does so. City of Chicago v. Sessions , 321 F.Supp.3d 855, 874 (N.D. III. 2018) (prohibiting the Department of Justice from conditioning *1269 federal grants on cooperation with federal immigration enforcement). And the U.S. Government has no interest involving the County's allegedly unconstitutional policy because this policy pertains to a voluntary decision the County has made to honor ICE detainers. Finally, proceeding without the U.S. Government would not, as the County suggests, leave it subject to incurring inconsistent obligations because the County is not obliged to honor ICE detainer requests and has instead freely and deliberately chosen to do so.
For these reasons, the Court finds that the U.S. Government is not an indispensable party that need be joined under Federal Rule of Civil Procedure 19 in order for this matter to proceed.
IV. CONCLUSION
For the foregoing reasons, it is ORDERED AND ADJUDGED that the County's motion to dismiss (DE 23) is GRANTED IN PART AND DENIED IN PART .
The County shall file an answer to the amended complaint within 14 days of the date of this Order.
DONE AND ORDERED in chambers in Miami, Florida, this 14th day of December, 2018.

Although Plaintiffs did not attach C.F.C.'s detainer form to the amended complaint, the same detainer form was in effect at the time of both individual Plaintiffs' arrests. The Court therefore assumes for purposes of ruling on the motion to dismiss that C.F.C.'s detainer form was substantively identical to S.C.C.'s, which is Exhibit A to the amended complaint. (DE 22, Ex. A).

The Board's 2016 resolution-which expressed in no uncertain terms that detaining individuals on the sole basis of an immigration detainer is illegal-was drafted by the Miami-Dade County Attorney's Office, which is now defending the County's current policy and practice of honoring all detainer requests.

The Parties appear to agree that the Mayor's directive-while clearly the impetus for the County's policy reversal-did not have the force of law until ratified by the Board's resolution on February 17, 2017.

This resolution also states that the County "will continue to require the federal government to show probable cause on all immigration detainer requests." Id. at 5. It is not clear whether this probable cause requirement refers to criminal matters or civil removal proceedings.

Although the INA refers to the "Attorney General" throughout, immigration enforcement responsibilities were transferred to the Secretary of DHS in 2002; therefore, references to the Attorney General now mean the Secretary of DHS and her subordinates. See 6 U.S.C. §§ 202, 291, 557 ; see also Clark v. Martinez , 543 U.S. 371, 374, n.1, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005).

Throughout this Order, two different probable cause contexts generally will be discussed: civil and criminal. Pursuant to certain provisions in the INA, ICE officers may arrest individuals (because, for example, the person has committed a specific civil immigration violation) provided that ICE has complied with all of the statutory requirements (probable cause that the person is removable and that the person is likely to escape before a warrant can be obtained). See 8 U.S.C. § 1357(a)(2). The authority given to ICE officers in the INA is a narrow exception to the general rule-applicable to all other law enforcement officers-that a seizure or detention under the Fourth Amendment requires probable cause of a crime . See, e.g. , Beck v. Ohio , 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ("When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that a[ ] [criminal] offense has been committed.") (quoting Carroll v. United States , 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925) ).

The County does not challenge Plaintiffs' standing to seek "prospective relief in the form of an injunction and declaration regarding Resolution R-163-17." (DE 23 at 8).

El Cenizo was decided by a two-judge "quorum" because "Judge Edward Prado, a member of the original panel in th[e] case, retired from the Court on April 2, 2018, and therefore did not participate in th[e] decision." El Cenizo , 890 F.3d at 183, n.1.

The Fifth Circuit stated the standard for issuing a preliminary injunction as follows: "To be entitled to a preliminary injunction, the applicants must show (1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." Id. at 176.